Florence **MARLING**, Appellant,

v.

**A.J. MAILLARD, M.D.,** Appellee.

No. B14–90–00809–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 5, 1992.

Rehearing Denied April 16, 1992.

Paula Pierce, Austin, for appellant.

John C. Landa, Jr., John Roberson, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION

CANNON, Justice.

This is a medical malpractice case. Appellant Florence Marling brought suit against appellee Dr. A.J. Maillard for alleged misdiagnosis and mistreatment. Based on the jury's verdict, the trial court rendered a take-nothing judgment in favor of Dr. Maillard. Appellant raises three points of error complaining that the trial court erred in refusing her tendered jury question on informed consent, admitting the testimony of an unqualified expert, and allowing improper jury argument. We affirm.

In August 1984, appellant was seen by her internist, Dr. Richard Carney, for diagnosis and treatment of a lesion on her lower lip or chin and swelling of her neck. Appellant had a history of chronic dental disease and had been seeing a dentist for the removal of her teeth one by one. Appellant had been taking an antibiotic for the neck swelling which had not resolved. Dr. Carney prescribed another antibiotic and referred appellant to a dermatologist for further evaluation of the lesion. On August 28, 1984, Dr. Mark Reisman biopsied the lesion and diagnosed it as squamous cell carcinoma, a form of skin cancer. Dr. Reisman removed the lesion in an office procedure. When appellant returned to Dr. Carney's office on September 11, Dr. Carney noticed not only increased areas of swelling but also a more pronounced degree of swelling. At that point, Dr. Carney became concerned about the spread of cancer to the lymph nodes of the neck. There was conflicting testimony as to whether the lesion was on appellant's chin or lip. That distinction was material because a lip lesion presents a significantly greater risk of the spread of cancer to the lymph nodes in the neck. The spread of cancer to the lymph nodes increases the risk of death because the lymph system provides tumor cells with a means of transfer to other parts of the body.

On September 12, 1984, Dr. Carney referred appellant to Dr. Maillard. He took a history and performed a regional head and neck examination. Dr. Maillard also viewed the pathology slides from the lesion biopsy and observed there were inadequate surgical margins on the biopsy specimen, indicating that the initial procedure did not remove all the tumor cells. Based on the history and examination, Dr. Maillard concluded that there was a serious risk that cancer had spread to the lymph nodes in appellant's neck. Dr. Maillard informed appellant of his conclusions and his recommendation for surgery, including completion surgery on the lip or chin and removal of the lymph nodes. On September 18, 1984, appellant was seen by Dr. Maillard and admitted to the hospital. Dr. Maillard consulted with an oral surgery team which ruled out dental infection as a cause of appellant's neck swelling because such swelling is a rare occurrence of chronic dental disease and appellant had no prior history of neck swelling. Furthermore, appellant's symptoms were inconsistent with an infection since her lymph nodes became swollen at the time the cancerous lesion appeared, her white blood count and body temperature were normal, and her neck swelling did not respond to antibiotics. Dr. Maillard and appellant agreed with the oral surgery team's recommendation to extract the remainder of appellant's teeth. That surgery was completed with appellant's consent before the neck procedure.

On the evening of September 19, Dr. Maillard met with appellant and discussed his diagnosis and recommendation that the lymph nodes be surgically removed by a procedure known as a modified radical neck dissection. Dr. Maillard explained the risks and hazards of the procedure to appellant, who agreed to undergo the procedure and signed a consent form. On September 20, 1984, Dr. Maillard performed the surgery, removing approximately twenty lymph nodes and surrounding soft tissue. The pathology of the excised nodes showed the presence of an infection but no cancer. As a result of surgery, appellant suffered from scar contracture, nerve problems, and disfigurement. Appellant filed suit against Dr. Maillard, alleging that he misdiagnosed the cause of her neck swelling and should not have surgically removed

her lymph nodes. Appellant also alleged that Dr. Maillard failed to inform her that her neck swelling was caused by a dental infection and that diagnostic or treatment options other than a modified radical neck dissection were available.

In her first point of error, appellant contends that the trial court erred in refusing to submit her tendered jury question on informed consent.

■ A trial court has great discretion in submitting jury questions. *Mobil Chemical v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). This discretion is subject only to the requirement that the submitted questions must control the disposition of the case and be raised by the pleadings and evidence. *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Tex.R.Civ.P. 277. In reviewing errors which involve the submission of jury questions, the submission should be considered as a whole to determine whether the error was prejudicial. *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 897 (Tex.App.—Texarkana 1987, writ dism'd by agr.). The trial court may not properly refuse to submit a question merely because the evidence is factually insufficient to support an affirmative finding. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). If there is evidence to support the submission of the jury questions, the trial court's refusal to submit such questions is reversible error. *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977).

■ The question of informed consent does not control the disposition of this case and is not raised by pleadings and evidence. *See Baker Marine Corp.*, 645 S.W.2d at 489. The Medical Liability and Insurance Improvement Act (the Act) regulates medical malpractice claims in Texas. Tex.Rev. Civ.Stat.Ann. art. 4590i. Sections 6.03 and 6.04 of the Act call for the creation of a medical disclosure panel to identify the medical treatments and surgical procedures which require disclosure by the physician of the risks and hazards to the patient. Those treatments and procedures not identified by the panel charge the physician

with the "duty otherwise imposed by law." *Id.* at § 6.07(b). The "duty otherwise imposed by law" is the duty to disclose all risks or hazards which could influence a reasonable person in making a decision to consent to the procedure. *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983).

A modified radical neck dissection is a procedure that has not been identified by the panel and, thus, Dr. Maillard was subject to the duty announced in *Peterson*. Appellant, however, did not allege in her pleadings that appellee failed to inform her of the risks and hazards associated with a modified radical neck dissection. In fact, it is undisputed that Dr. Maillard advised appellant of the risks and hazards of the procedure and that appellant signed a consent form. The basis of appellant's suit is that Dr. Maillard misdiagnosed the cause of appellant's neck swelling and performed unnecessary surgery.

■ Appellant would have us hold a physician who negligently misdiagnoses a patient liable for also not informing the patient of what later turns out to be the "correct" diagnosis. To so hold would subject the physician who is unaware of, or mistaken as to, the "correct" diagnosis to additional liability for not informing the patient of all possibly "correct" diagnoses. The Act does not provide for such liability. Misdiagnosis or mistreatment may constitute negligence but it does not constitute a cause of action based upon the theory of informed consent. *Brown v. Armstrong*, 713 S.W.2d 725, 727 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

■ Even if the question of "informed consent" were applicable, appellant waived error by failing to tender the question in "substantially correct wording." Rule 278 provides that "failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment." Tex. R.Civ.P. 278. A tendered question is in "substantially correct wording" if it is not "affirmatively incorrect." *Placencio v. Al-*

*lied Indus. Int'l,* 724 S.W.2d 20, 21 (Tex. 1987). Appellant's tendered question asked:

> Do you find from a preponderance of the evidence that Dr. Maillard neglected to give Mrs. Marling sufficient information for her to make an informed decision to either have or refuse the modified radical neck resection surgery?

The above question did not inquire into whether appellant was informed of a risk inherent in the medical procedure performed, whether that risk would have influenced a reasonable person in making a decision to consent, or proximate cause. *McKinley v. Stripling,* 763 S.W.2d 407, 409 (Tex.1989); *Barclay v. Campbell,* 704 S.W.2d 8, 10 (Tex.1986); *Peterson,* 652 S.W.2d at 931. Assuming the question of informed consent were applicable and appellant preserved error, appellant cannot complain because the trial court allowed her to argue her theory under the single broad-form question submitted to the jury. The jury rejected that theory. We overrule appellant's first point of error.

■ In her second point of error, appellant contends that the trial court erred in admitting the expert testimony of a dentist, Dr. Paul McFarland. Specifically, appellant complains that Dr. McFarland was not qualified to testify that the treatment rendered by Dr. Maillard was appropriate. Appellant, however, failed to preserve error.

During direct examination, counsel for Dr. Maillard asked Dr. McFarland his opinion on whether "a modified radical neck dissection was appropriate for appellant under the circumstances." Counsel for appellant objected that "the witness was not qualified in the area of head and neck surgery." The trial court sustained her objection. Dr. Maillard's attorney then elicted additional testimony to establish the proper predicate, including that Dr. McFarland performed a neck dissection during his medical training and frequently worked with neck surgeons in cases similar to appellant's. When Dr. Maillard's attorney repeated his earlier question, appellant's attorney objected. The court overruled her

objection. Appellant's attorney examined the witness on voir dire, eliciting testimony that Dr. McFarland was not a medical doctor and not licensed to perform the procedure in question. Appellant's attorney reasserted her objection to the witness's qualifications. The court again overruled her objection. Dr. Maillard's attorney subsequently elicited testimony from Dr. McFarland to the effect that, even if licensed, he would have referred the patient to someone who regularly performed the procedure. Dr. Maillard's attorney then asked the following question:

> Q: Okay. And based on the information that you have based on patients that you've treated in the past, and your training, do you feel like a modified neck dissection was appropriate treatment for Mrs. Darling?
>
> A: I think it was entirely appropriate based on my background.

■ Counsel for appellant allowed Dr. McFarland to give his previously undisclosed opinion without objection. Counsel for appellant, by her silence, created the impression that she had decided against challenging the testimony in light of the additional predicate. When an objection to evidence is properly made, the subsequent presentation of essentially the same evidence without objection waives any complaint regarding the admission of the evidence. *Celotex Corp. v. Tate,* 797 S.W.2d 197, 201 (Tex.App.—Corpus Christi 1990, no writ) (citing *Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984)); *See Urquhart v. Antrum,* 776 S.W.2d 595, 596 (Tex. App.—Houston [14th Dist.] 1988, no writ).

Even if appellant had preserved error, we conclude that the trial court properly admitted Dr. McFarland's testimony. Expert testimony is permitted where "scientific, technical or other specialized knowledge will *assist* the trier of fact to understand the evidence or determine a fact in issue." *Burlington Northern R. Co. v. Harvey,* 717 S.W.2d 371, 377 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.) (emphasis in original); Tex.R.Civ.Evid. 702. A trial court's determination as to whether a witness qualifies as an expert will not be

disturbed on appeal unless a clear abuse of discretion is shown. *Id.* Section 14.01 of the Act provides in part that "in a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is practicing at the time such testimony is given or was practicing at the time the claim arose and has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim." TEX.REV. CIV.STAT.ANN. art. 4590i, § 14.01(a)(1). "Practicing" includes "serving as a consulting physician to other physicians who provide direct care, upon the request of such other physicians." *Id.* at § 14.01(b). Section 14.01 does not appear to disturb the court's discretion recognized at common law and embodied in Rule 702. 43 BAYLOR L.REV. 1, 9, n. 29 (1991).

Appellant points out that Dr. McFarland was not licensed in the same or similar school of medicine as Dr. Maillard and was not competent to testify as to the appropriateness of a modified radical neck dissection. *See Hart v. Van Zandt*, 399 S.W.2d 791, 797 (Tex.1965); *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949). Appellant took the position at trial that her symptoms were caused by a dental infection, not cancer. She offered expert testimony, including that of a dentist, in support of her position. Dr. McFarland's testimony was offered to rebut appellant's evidence on that material issue in the case.

■ Dr. McFarland is board certified in oral and maxillofacial surgery and practiced for thirty-eight years until his retirement in 1989. He is a former professor of oral and maxillofacial surgery and associate dean of graduate studies at the University of Texas Dental School. He actually performed neck dissections during his residency and throughout his career "frequently worked hand-in-hand with neck surgeons in cases like this one." Dr. McFarland was a member of the oral surgery team requested by Dr. Maillard to examine and

evaluate appellant's chronic dental disease. He testified that appellant's neck swelling was not caused by a dental infection and that Dr. Maillard's care was proper. A medical witness who is not of the same school of medicine is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *Bilderback v. Priestley*, 709 S.W.2d 736, 740 (Tex.App.— San Antonio 1986, writ ref'd n.r.e.). We find no abuse of discretion by the trial court.

■ Even if Dr. McFarland's testimony was improperly admitted, it was harmless because it was cumulative of testimony by Dr. Maillard and appellant's own expert, Dr. Randolph Cole. TEX.R.APP.P. 81(b)(1). Dr. Cole is an assistant professor of otolarnygology/head and neck surgery at The University of Texas Medical School and board certified in otolaryngology. He testified that, faced with a "50/50 chance" that her neck swelling was caused by either a dental infection or cancer, appellant received the proper treatment. We overrule appellant's second point of error.

■ In her third point of error, appellant contends that the trial court erred in allowing improper jury argument. Specifically, appellant contends that the reference by Dr. Maillard's attorney to an expert witness who did not testify is reversible error. *See* TEX.R.CIV.P. 269(e). Appellant complains of the following argument:

Mr. Landa: ... In fact, I should—as a side comment I should tell you, we told you at the beginning of trial we intended to call Dr. Robert Byers to the stand. What happened though is on the central issue of—

Ms. Wimbish: Objection, Judge. Dr. Byers was not called and there's no evidence from Dr. Byers in the case so I'm going to object to referring to a witness that was never called.

The Court: Let me hear what he's going to say.

Mr. Landa: Y'all heard witness after witness testifying on whether or not a biopsy should be done and whether taking out one node rules out other nodes. And

it got to the point where at least Charlie Parker and I came to the conclusion on our own judgment call, that you had heard the evidence and it was getting pretty repetitive and there was just no more need to call in one more person to say the same thing that you heard....

██ Assuming that counsel's remarks were improper, appellant did not preserve error. In the case of improper jury argument, appellant has the burden to prove, among other things, that error was preserved by the proper trial predicate such as an objection, a motion to instruct, or a motion for mistrial. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex. 1979). Appellant failed to obtain a ruling or request a curative instruction.

Further, any error was harmless. Appellant asserts that error was accentuated by counsel's reference in his opening statement to Dr. Byers as a "nationwide authority with M.D. Anderson, who will tell you that it's appropriate to do a modified neck dissection without doing a biopsy." Error during jury argument is harmful if, from the record as a whole, "the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and evidence." 584 S.W.2d at 840. The most that the jury could have inferred from counsel's passing remark during jury argument is that Dr. Byers would have testified that it was appropriate for Dr. Maillard to operate without performing a biopsy. There is testimony throughout the record in support of that very point. In addition, counsel for Dr. Maillard cross-examined appellant's primary expert with an article co-authored by Dr. Byers. That article referred to a 1988 study at M.D. Anderson Hospital where modified radical neck dissections were done on lip cancer patients who had no neck swelling and who were later determined not to have cancer in the lymph nodes. Finding that error, if any, is harmless, we overrule appellant's third point of error. Accordingly, we affirm the judgment of the trial court.