COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-256-CV
  
  
ILENE 
EHRLICH                                                                     APPELLANT
  
V.
  
DR. 
WILLIAM MILES, M.D.                                                        APPELLEE
INDIVIDUALLY
  
  
------------
 
FROM 
THE 153RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Ilene Ehrlich filed this medical malpractice suit against Appellee Dr. William 
Miles for injuries that resulted from a face lift and cheek implants. Appellee 
filed a motion to dismiss, alleging that Appellant’s expert report was not 
sufficient. Appellant then filed a motion to extend time to file an expert 
report. The trial court denied Appellant’s motion for extension and granted 
Appellee’s motion to dismiss. In two points, Appellant now appeals. Because we 
hold that Appellant’s expert was not qualified to testify to all of the 
statements made in his report, that the causation portion of his report does not 
specify that the individual acts that he is qualified to testify about 
independently caused the injury, and Appellant does not qualify for an extension 
to file an expert report, we affirm the trial court’s judgment.
Facts
        Appellee 
performed plastic surgery on Appellant, giving her a face lift and cheek 
implants. After the surgery, the implants became infected. At first, Appellee 
treated Appellant’s infection with antibiotics. When the antibiotics did not 
help, he removed the cheek implants. Appellant then began to see another doctor 
for the treatment of the pain and numbness in her face. Because Appellant was 
told that the surgery and the treatment of the infection had caused permanent 
nerve damage in her face, she filed this suit.
        Within 
180 days of filing suit, as required by the Texas Medical Liability and 
Insurance Improvement Act (“the Act”),[1] Ehrlich 
filed an expert report prepared by Dr. Charles Marable. Appellee alleged that 
the report was not sufficient and filed a motion to dismiss, alleging, among 
other things, that Dr. Marable is not qualified as an expert and that his expert 
report was not a good faith effort to comply with the statute. Appellant filed a 
response to the motion and requested in the alternative that the court grant a 
motion for extension of time to file a new report.[2]  
The trial court denied the extension of time and granted the motion to dismiss.
        In 
two points, Appellant argues that the trial court abused its discretion by (1) 
granting the motion to dismiss and ruling that Appellant’s expert report was 
not a good faith effort to comply with the statute’s requirement of an 
expert’s report and (2) denying Appellant’s motion for an extension of time 
under section 13.01(g) of article 4590i, because the failure to timely file an 
expert report that complied with the statute’s requirements was not 
intentional or the result of conscious indifference.
Standard of 
Review
        Dismissal 
of a cause of action under article 4590i, section 13.01 is treated as a sanction 
and is reviewed for an abuse of discretion.[3]  
An abuse of discretion occurs when a trial court acts in an arbitrary or 
unreasonable manner or without reference to any guiding principles.[4]  A trial court does not abuse its discretion simply 
because it may decide a matter within its discretion differently than an 
appellate court.[5]  However, a trial court has 
no discretion in determining what the law is or in applying the law to the 
facts.[6]  Thus, “a clear failure by the trial 
court to analyze or apply the law correctly will constitute an abuse of 
discretion.”[7]
Expert Report 
Requirement
        The 
Act sets forth explicit requirements for plaintiffs asserting healthcare 
liability claims.[8]  The Act requires a 
plaintiff asserting a healthcare liability claim to submit an expert report, 
along with the expert’s curriculum vitae, for each physician or healthcare 
provider named as a defendant in the suit, no later than the 180th day after 
filing suit.[9]  If a plaintiff timely files an 
expert report and the defendant moves to dismiss a claim because of the 
report’s inadequacy, the trial court must grant the motion “only if it 
appears to the court, after a hearing, that the report does not represent a good 
faith effort to comply with the definition of an expert report in subsection 
(r)(6) of this section.”[10]
        In 
her first point, Appellant contends that Dr. Marable’s report complies with 
the statutory requirements and represents a good faith effort to comply with the 
statutory definition of an expert report as required by sections 13.01(l) 
and 13.01(r)(6).  We disagree.
Qualified 
Expert
        One 
basis upon which Appellee attacked the report was that it failed to show that 
Dr. Marable was qualified to be an expert witness in this case.
        Section 
13.01(r)(5) states that an “expert” means “with respect to a person giving 
opinion testimony regarding whether a physician departed from accepted standards 
of medical care, an expert qualified to testify under the requirements of 
Section 14.01(a) of this Act.”[11]  Section 
14.01 of the Act sets out the following requirements for an expert witness:
  
[A] 
person may qualify as an expert witness on the issue of whether the physician 
departed from accepted standards of medical care only if the person is a 
physician who:
(1) 
is practicing medicine at the time such testimony is given or was practicing 
medicine at the time the claim arose;
(2) 
has knowledge of accepted standards of medical care for the diagnosis, care, or 
treatment of the illness, injury, or condition involved in the claim; and
(3) 
is qualified on the basis of training or experience to offer an expert opinion 
regarding those accepted standards of medical care.[12]
 
 
        In 
determining whether the expert is qualified on the basis of training and 
experience, the court is to consider whether, at the time the claim arose or the 
testimony is given, the witness is board certified or has other substantial 
training or experience in an area of practice relevant to the claim and is 
actively practicing medicine in rendering medical care services relevant to the 
claim.[13]  Because of the increasing 
specialization of medicine,
 
there 
is no validity, if there ever was, to the notion that every licensed medical 
doctor should be automatically qualified to testify as an expert on every 
medical question. . . . [T]he proponent of the testimony has the burden to show 
that the expert ‘possesses special knowledge as to the very matter on which he 
proposes to give an opinion.’[14]
 
  
Thus, 
the test is whether “the offering party [has] establish[ed] that the expert 
has ‘knowledge, skill, experience, training, or education’ regarding the 
specific issue before the court which would qualify the expert to give an 
opinion on that particular subject.”[15]  A 
medical expert who is not of the same school of medicine, however, is competent 
to testify if he has practical knowledge of what is usually and customarily done 
by a practitioner under circumstances similar to those confronting the 
defendant.[16]
        Appellant 
underwent surgical procedures involving a face lift and cheek implants performed 
by Appellee, a plastic surgeon. According to Dr. Marable’s curriculum vitae, 
he is board certified in neurology and forensic medicine, not in plastic surgery 
or in surgery of any kind. Neurology is the scientific study of the nervous 
system, especially in respect to its structure, functions, and abnormalities.[17]  A neurologist is a physician skilled in the 
diagnosis and treatment of disease of the nervous system.[18]  
Because numbness and pain are nervous system reactions, one who specializes in 
neurology should be familiar with procedures, symptoms, and infections that 
affect the nerves.  Thus, Dr. Marable’s specialization might be relevant 
to Appellant’s claim.  He is qualified to testify regarding any treatment 
of the nerve-damaging infection, as well as the consultation with a patient 
regarding the benefits and risks of surgery.[19]
        Nothing 
in the expert report or Dr. Marable’s curriculum vitae indicates that he is 
familiar with either the surgical procedures used by Appellee for the face lift 
and implants or with the preoperative procedures used by Appellee to prepare 
Appellant’s face for the face lift and implants. Dr. Marable does not state 
that he has knowledge of the accepted standards of medical care for the 
diagnosis, care, and treatment regarding plastic surgery. Further, Dr. Marable 
does not show that he is qualified on the basis of his training or experience to 
offer an expert opinion regarding those accepted standards of medical care. In 
short, Appellant did not establish that Dr. Marable was qualified to give an 
expert opinion regarding the surgical procedures performed on Appellant.[20]
Good Faith 
Effort To Comply
        Because 
we hold that Dr. Marable was not qualified to opine regarding Appellee’s 
alleged negligence in the surgical procedures, we must determine if, after 
removing the improper statements, the remainder of the report represents a good 
faith effort to comply with the requirements of the Act. Pursuant to sections 
13.01(l) and 13.01(r)(6), an expert report must represent a good faith 
effort to provide a fair summary of the expert’s opinions.[21]  
The expert report does not need to marshal all of the plaintiff’s proof, but 
it must include the expert’s opinion on each of the elements identified in the 
statute.[22]  The report cannot merely state the 
expert’s conclusions about these elements.[23]  
“[R]ather, the expert must explain the basis of his statements to link his 
conclusions to the facts.”[24]
        In 
Palacios, the Texas Supreme Court found that an expert report must 
accomplish two specific goals to meet section 13.01’s requirements.[25]  First, the report must inform the defendant of the 
specific conduct the plaintiff has called into question.[26]  
Second, the report must provide a basis for the trial court to conclude the 
claims in question have merit.[27]  A report 
that fails to lay out the required elements, simply stating the expert’s 
conclusions as to the standard of care, breach, and causation, does not meet 
these purposes or constitute a good faith effort.[28]  
In deciding whether the statutory standard is met, a trial court should stay 
within the four corners of the expert report itself, without considering 
referenced medical records or affidavits.[29]
        To 
comply with the expert report requirement, a plaintiff must only make a good 
faith attempt to provide a fair summary of the expert’s opinions.[30]  It is the substance of the opinions, not the 
technical words used, that constitutes compliance with the statute.[31]  The expert report may be informal, and the 
information presented need not meet the same requirements as evidence offered in 
a summary judgment proceeding or in a trial.[32]
        Under 
the recommendations/discussion section of Dr. Marable’s report he states:
  
In 
a malpractice suit there are four elements that need to be evaluated, duty, 
breach of duty, causation and damages. In this case, we feel the failures of Dr. 
Bill Miles are the following: Failure to warn patient of the risks and dangers 
of having the surgery, failure to realize the infection could not be treated by 
antibiotics, and failure to remove the implants when they became infected, 
failure to properly repair [sic] her face for laser treatment, failure to 
realize the implants had fallen.
 
What 
are the standards of care. The standard of care would have been the following: 
Not to do bilateral facial implants, but to give a small facial implant on the 
right-hand side. The second standard of care was once the patient had infection, 
to tell the patient this needed to be taken out, and not to suggest antibiotics 
since antibiotics are known to not be effective in implant cases, and the only 
way to get rid of the infection is to discontinue or take out the implants. 
Another standard of care would have been to properly prepare the face with [sic] 
laser surgery with proper creams prior to surgery. Finally, the primary standard 
of care of course, is whenever a surgical procedure is contemplated, the surgeon 
should discuss all the risks and benefits of the surgery and let the patient 
decide if the risks of surgery and possibility of complications outweigh the 
benefits that could . . . be gained from surgery, and this was not done in this 
patient.
 
Therefore, 
I feel this case has merit because basically the doctor failed to warn her of 
all the risks and complications that could result from this. He failed to warn 
her about the possibility of infection, and failed to warn her that once the 
implants [became infected] they needed to be removed instead of just treated 
with antibiotics.
 
Therefore, 
I feel his negligent activity that I listed above, is the proximate cause of 
this patient’s pain and suffering that she has undergone, as well as 
explantation of the implants and the current pain she is undergoing and will 
most likely have the rest of her life.
 
 
        Reviewing 
only the statements this expert is qualified to make in this case, Dr. 
Marable’s report states his opinions concerning the standard of care, the 
breach, and causation in these particulars:
Standard 
of Care:
Once 
the patient had an infection, tell the patient that the only way to get rid of 
the infection is to remove the implant. Whenever a surgical procedure is 
contemplated, the surgeon should discuss all the risks and possibility of 
complications of surgery and let the patient decide whether the benefits 
outweigh the risks.
 
Breach:
 
Treating 
the patient with antibiotics for the infection rather than removing the 
implants. Failing to consult the patient regarding the risks and benefits prior 
to surgery.
 
Causation:
 
His 
negligent activity that I listed above is the proximate cause of this 
patient’s pain and suffering.
 
 
        We 
hold that the report does not meet the causation requirement of the Act.[33]  Although the report provides direct statements of 
the standards of care required, Appellee’s breaches of that standard of care, 
and the procedure that should have been followed, after removing the statements 
in the report that Dr. Marable is not qualified to make in this case, the report 
does not clearly address the element of causation.  The report simply 
states the “negligent activity that I listed above is the proximate cause of 
this patient’s pain and suffering.”  The report fails to state whether 
each negligent activity listed above independently caused Appellant’s pain and 
suffering or if each negligent activity combined to cause her pain and 
suffering.[34]  Because we hold that Dr. Marable 
is not qualified to testify to some of the negligent activity alleged in the 
report, the phrase “negligent activity that I listed above,” without a 
specific indication that each alleged negligent activity was an independent 
cause, fails to link Dr. Marable’s qualified statements of alleged negligent 
activities to the specific injuries in this case.[35]
        Without 
a positive link between at least one of the independent qualified statements of 
alleged negligence and the injuries, Dr. Marable’s causation statement is 
merely conclusory and we are constrained to hold that it is not a good faith 
effort to comply with the Act.[36]  
Consequently, because the Appellant’s expert report does not meet the 
requirements of § 13.01(r)(6), the trial court did not abuse its discretion by 
dismissing the case as provided in the Act. We overrule Appellant’s first 
point.
Extension of 
Time to File Expert Report
        Appellant 
also argues that the trial court abused its discretion by denying her motion for 
an extension of time to file her expert report under section 13.01(g) of the 
Act.  We disagree.
        Section 
13.01(g) states:
 
Notwithstanding 
any other provision of this section, if a claimant has failed to comply with a 
deadline established by Subsection (d) of this section and after hearing the 
court finds that the failure of the claimant or the claimant’s attorney was 
not intentional or the result of conscious indifference but was the result of an 
accident or mistake, the court shall grant a grace period of 30 days to permit 
the claimant to comply with that subsection. A motion by a claimant for relief 
under this subsection shall be considered timely if it is filed before any 
hearing on a motion by a defendant under Subsection (e) of this section.[37]
 
 
        The 
Texas Supreme Court has held that because a party who files suit on claims 
subject to the Act is charged with knowledge of the Act’s requirements, when a 
party files a report that omits one or more elements of section 13.01(r)(6), a 
purportedly mistaken belief that the report complied with the Act does not 
negate a finding of “intentional or conscious indifference” barring the 
party from a section 13.01(g) grace period.[38] That 
is, the Texas Supreme Court has held that while some mistakes of law—of which 
it provides no examples— can negate a finding of intentional or conscious 
indifference and thus entitle the claimant to the grace period, a mistake of relevant 
law—such as the mistaken belief that an expert report meets the requirements 
of the Act—cannot.[39]  Unfortunately, the 
Texas Supreme Court has not provided us with an example of what this mistake of 
law might be, and, given the case law on the issue, we cannot fathom an example 
on our own.  Because we were forced to hold above that Appellant’s expert 
report omitted the causation requirement of the Act, and because the Texas 
Supreme Court has held that mistakes of law concerning the Act do not negate a 
finding of intentional or conscious indifference, we are constrained to hold 
that Appellant’s mistaken belief that the report complied with the Act does 
not negate a finding of “intentional or conscious indifference.”  
Therefore, the trial court did not abuse its discretion by denying Appellant’s 
motion for a section 13.01(g) extension of time to file an expert report.  
We overrule Appellant’s second point.
Conclusion
        Having 
overruled Appellant’s two points, we affirm the trial court’s judgment.
   
  
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
  
  
PANEL B:   DAUPHINOT, 
HOLMAN, and GARDNER, JJ.
DELIVERED: 
August 12, 2004


NOTES
1.  
See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. 
Laws 985, 989 (former Tex. Rev. Civ. 
Stat. art. 4590i, § 10.01 (Vernon 2002), repealed by Act of June 
2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 
(current version at Tex. Civ. Prac. & 
Rem. Code Ann. § 74 (Vernon 2004)).  This action was filed January 
15, 2003, before the new Act’s September 1, 2003 effective date.  This 
opinion will refer to the former statute as article 4590i.
2.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 
989 (former Tex. Rev. Civ. Stat. 
art. 4590i, § 13.01(g) (Vernon 2002), repealed by Act of June 2, 2003, 
78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current 
version at Tex. Civ. Prac. & Rem. 
Code Ann. § 74.351 (Vernon 2004)).
3.  
Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001); Estate 
of Birdwell v. Texarkana Mem’l Hosp., Inc., 122 S.W.3d 473, 477 (Tex. 
App.—Texarkana 2003, pet. denied).
4.  
See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).
5.  
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985); Birdwell, 
122 S.W.3d at 477.
6.  
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).
7.  
Id.
8.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01, 1995 Tex. Gen. 
Laws 985 (repealed 2003).
9.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex. 
Gen. Laws 985 (repealed 2003).
10.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(l), 1995 
Tex. Gen. Laws 985 (repealed 2003).
11.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01 (r)(5), 1995 
Tex. Gen. Laws 985 (repealed 2003).
12.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 985, 
988 (former Tex. Rev. Civ. Stat. 
art. 4590i, § 14.01(a) (Vernon 2002), repealed by Act of June 2, 2003, 
78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current 
version at Tex. Civ. Prac. & Rem. 
Code Ann. § 74.401 (Vernon 2004)).
13.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01(c) 1995 Tex. 
Gen. Laws 985, 988 (repealed 2003).
14.  
Broders v. Heise, 924 S.W.2d 148, 152–53 (Tex. 1996) (quoting 2 Ray, Texas Practice: Texas Law of Evidence: 
Civil and Criminal § 1401, at 32 (3d ed. 1980)).
15.  
Roberts v. Williamson, 111 S.W.3d 113, 121 (Tex. 2003) (quoting Broders, 
924 S.W.2d at 153).
16.  
Marling v. Maillard, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th 
Dist.] 1992, no writ).
17.  
Webster’s Third New International 
Dictionary 1521 (1981).
18.  
Id.
19.  
See Marling, 826 S.W.2d at 740.
20.  
See Broders, 924 S.W.2d at 153.
21.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985 
(repealed 2003); De Leon v. Vela, 70 S.W.3d 194, 198 (Tex. App.—San 
Antonio 2001, pet. denied).
22.  
Palacios, 46 S.W.3d at 878; Doades v. Syed, 94 S.W.3d 664, 671 
(Tex. App.—San Antonio 2002, no pet.).
23.  
Palacios, 46 S.W.3d at 878.
24.  
Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999); see Windsor v. 
Maxwell, 121 S.W.3d 42, 47 (Tex. App.—Fort Worth 2003, pet. denied).
25.  
Palacios, 46 S.W.3d at 879.
26.  
Id.; Windsor, 121 S.W.3d at 47.
27.  
Palacios, 46 S.W.3d at 879; Windsor, 121 S.W.3d at 47.
28.  
Palacios, 46 S.W.3d at 879; Windsor, 121 S.W.3d at 47; Doades, 
94 S.W.3d at 671.
29.  
Palacios, 46 S.W.3d at 878; Windsor, 121 S.W.3d at 47; De Leon, 
70 S.W.3d at 198.
30.  
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(l), 1995 
Tex. Gen. Laws 985 (repealed 2003); Palacios, 46 S.W.3d at 875; Birdwell, 
122 S.W.3d at 479.
31.  
Moore v. Sutherland, 107 S.W.3d 786, 790 (Tex. App.—Texarkana 2003, 
pet. denied); Birdwell, 122 S.W.3d at 480.
32.  
Palacios, 46 S.W.3d at 879; Birdwell, 122 S.W.3d at 480.
33.  
See Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. 
Laws 985 (repealed 2003).
34.  
See Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52–53 (Tex. 2002).
35.  
See id.
36.  
See id. at 53.
37.  
See Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(g), 
1995 Tex. Gen. Laws 985 (repealed 2003).
38.  
Walker v. Gutierrez, 111 S.W.3d 56, 65 (Tex. 2003).
39.  
Id.; but see Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997) 
(holding cost bond filed too late under former appellate rules, the relevant 
rules for timing of civil appellate filings and therefore the rules the 
appellant was charged with knowledge of, was filed in good faith and should 
necessarily be treated as a timely motion for extension of time, reversing the 
court of appeals’s dismissal of the case); Bank One, Texas, N.A. v. Moody, 
830 S.W.2d 81, 85 (Tex. 1992) (holding that failure to file answer as required 
by the Texas Rules of Civil Procedure, the relevant rules of procedure in civil 
cases and therefore the rules the appellant was charged with knowledge of, was a 
mistake of law that negated a finding of intentional or conscious indifference, 
reversing default judgment); Angelo v. Champion Rest. Equip. Co., 713 
S.W.2d 96, 97 (Tex. 1986) (same).