

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GRANBURY MARINA HOTEL, L.P., D/B/A HILTON GARDEN INN, GRANBURY, | § | |
| | § | No. 08-13-00246-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law |
| BERKEL AND COMPANY CONTRACTORS, INC., | § | of Hood County, Texas |
| Appellee. | § | (TC# C06011) |
| | § | |

## **O P I N I O N**

This appeal arises from a jury verdict in favor of a contractor, Berkel and Company Contractors, Inc. (hereinafter, "Berkel"), in its breach-of-contract action against a developer, Granbury Marina Hotel L.P. d/b/a Hilton Garden Inn, Granbury (hereinafter, "Hilton"). The jury awarded Berkel $40,148.00 in actual damages and $18,600.00 in attorney's fees. After Berkel accepted a remittitur of damages, the trial court entered a judgment awarding Berkel $30,348.00 in actual damages, $18,600.00 in attorney's fees, $964.59 in court costs, $6,828.30 in pre-judgment interest, and post-judgment interest at the rate of five percent, compounded annually.

On appeal, Hilton challenges the sufficiency of the evidence supporting the jury's verdict (Issue One), the admission of evidence as business records (Issue Two), and the denial of its

motion for new trial (Issue Three).   Concluding that the trial erroneously admitted hearsay evidence and that this error probably resulted in an improper judgment, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Berkel, which has been in business since 1959, installs deep foundations in poor soil conditions—by driving piles into bedrock—to support tall building and big structures.   In May 2007, Berkel entered into a contract with Hilton to install a deep foundation for the construction of a hotel at a marina.   Berkel's vice president and regional manager, Tracy Brettmann, signed the contract, which was valued at $391,680.00.   The contract required Hilton to make progress payments but permitted Hilton to withhold 10 percent of the amount owed until completion of the project.

The project was completed in early July 2007.   Shortly thereafter, Berkel sought final payment in the amount of $40,148.00.[1]   Hilton refused to pay, prompting Berkel to file suit against Hilton.   Berkel brought causes of action for:   (1) suit on a sworn account; (2) breach of contract; (3) quantum meruit; and (4) promissory estoppel.   Berkel denied the claims and countersued for breach of contract.[2]

The case proceeded to a one-day jury trial.   Berkel called two witnesses—Brettmann and trial counsel—and Hilton called none.   During Brettmann's testimony, Berkel offered into evidence two exhibits relevant to the disposition of this appeal.   The first was Plaintiff's Exhibit No. 2, a document labeled "APPLICATION AND CERTIFICATION FOR PAYMENT" and the second Plaintiff's Exhibit No. 3, a document labeled "FINAL Retainage Application for Payment

---

[1] Berkel installed additional pilings at Hilton's request.   These additional pilings cost Hilton $9,800.00, which increased the amount of the contract to $401,480.00.   Ten percent of $401,480.00 is $40,148.00.

[2] Hilton eventually nonsuited its counterclaim.

and FINAL Lien Releases." When Berkel moved for the admission into evidence of Plaintiff's

Exhibit No. 2, the following colloquy occurred:

[PLAINTIFF'S COUNSEL]: I want to show you what's been marked as Exhibit No. 2. Is this an application certification for payment related to this project?

[BRETTMANN]: Yes, it is.

[PLAINTIFF'S COUNSEL]: And is this – You're the custodian of records, correct?

[BRETTMANN]: Yes.

[PLAINTIFF'S COUNSEL]: Is this a true and correct copy of that, was it made at the time of the date, which is August 8th, 2007?

[BRETTMANN]: Yes, it is.

[PLAINTIFF'S COUNSEL]: Your Honor, we at this time move for admission of Exhibit No. 2 – Plaintiff's Exhibit.

[TRIAL COURT]: Any objection?

[DEFENDANT'S COUNSEL]: Yes, Your Honor, two objections; one, as to the business records foundation. We object, two, that the witness has not shown the requisite personal knowledge of how the records were maintained in the course of business. And then we would also object to the hearsay within hearsay from the affidavit that is contained in the record.

[TRIAL COURT]: All right. As to objection – that first objection, that's sustained. Go ahead and lay the foundation on the business records, please.

[PLAINTIFF'S COUNSEL]: Well, Mr. Brettmann, are you custodian of the records?

[BRETTMANN]: Yes.

[PLAINTIFF'S COUNSEL]: If you would take a look at this document, is it true and accurate and was it made at the time it shows on the date?

[BRETTMANN]: Yes, it was.

3

[PLAINTIFF'S COUNSEL]: Is this the type of document -- is this document kept in the normal course of business of Berkel and Company Contractors?

[BRETTMANN]: It is, yes.

[PLAINTIFF'S COUNSEL]: Your Honor, at this time we would move for admission of Exhibit No. 2.

[TRIAL COURT]: All right. The second objection is overruled. The first objection is now overruled. No. 2 is admitted.

A similar exchange transpired when Berkel moved for the admission into evidence of Plaintiff's

Exhibit No. 3:

[PLAINTIFF'S COUNSEL]: I'm going to show you Plaintiff's Exhibit No. 3. This is entitled Final Retainage Application for Payment and Final Lien Releases. Let me ask you the same questions on that one. Are you the custodian of records for Berkel and Company?

[BRETTMANN]: Yes, I am.

[PLAINTIFF'S COUNSEL]: Is that a true and correct copy of the document -- of what it represents to be?

[BRETTMANN]: Yes, it is.

[PLAINTIFF'S COUNSEL]: Was that document made on or about the time that it shows, which -- on the date it would show?

[BRETTMANN]: Yes.

[PLAINTIFF'S COUNSEL]: And is that document kept in the normal course of business at Berkel?

[BRETTMANN]: Yes.

[PLAINTIFF'S COUNSEL]: Your Honor, at this time we would move for admission of Exhibit 3, Plaintiff's.

[TRIAL COURT]: Objection?

[DEFENDANT'S COUNSEL]: Your Honor, again, we'd object on the lack of proper foundation as to the knowledge of the -- personal knowledge of how the

4

records or the knowledge of the records were kept by someone with personal knowledge and under improper foundation and would also object to the hearsay within the document purporting to be an affidavit of Gregory Wileke.

[TRIAL COURT]: All right. That objection's overruled. Plaintiff's Exhibit No. 3 are [sic] admitted.

Referring to and relying on the information contained in these exhibits, Brettmann testified that Hilton owed Berkel $40,148.00. Brettmann also testified that the project was complete when Berkel submitted the final invoice to Hilton and that Hilton breached the contract when it did not pay the invoice 30 days after its submission. The jury agreed, finding that Hilton failed to comply with its contract with Berkel.

As mentioned earlier, Hilton raises three issues on appeal, the first of which challenges the legal sufficiency of the evidence supporting the jury's verdict. When an appellant asserts multiple grounds for reversal of the trial court's judgment, an appellate court should first address all issues that would require rendition and then, if necessary, consider issues that would result in remand. *See* TEX.R.APP.P. 43.3; *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003). Because sustaining Hilton's first issue would result in rendition of judgment in its favor, we will consider it first.

## CONDITION PRECEDENT

In its first issue, Hilton argues that the evidence is legally insufficient to support the jurors' finding that it failed to comply with its contract with Berkel because the evidence conclusively established "Berkel's failure to meet a condition precedent to payment." In so arguing, Hilton asserts that "[t]he contract required . . . Berkel [to] obtain approval and certification of its work [by the construction manager] before being entitled to payment[]" and that "Brettmann testified that this approval and certification never took place." But Berkel was not required to prove at trial that

5

it had obtained approval and certification because Hilton did not specifically deny the occurrence of this condition precedent.[3]

In its petition, Berkel pled that "[a]ll conditions precedent to [its] claim for relief have been performed or have occurred." Thus, by operation of Texas Rule of Civil Procedure 54, Berkel was required to prove only the conditions precedent that Hilton specifically denied. *See* TEX.R.CIV.P. 54 (party is required to prove only those conditions precedent that have specifically been denied by the opposing party). Hilton did not specifically deny that Berkel failed to meet its contractual obligation to obtain approval and certification of its work by the construction manager. Instead, in response to Berkel's allegation that it had performed all conditions precedent, Hilton pled what can only be characterized as a hybrid answer encompassing the affirmative defense of payment (albeit by a third party) and a general denial:

> Berkel failed to perform its contractual obligations that were required to be performed in order to bring this cause of action. Berkel's claim is invalid because Granbury Marina paid that amount to MCC[4] for distribution to Berkel, and is contractually absolved as Berkel agreed to look to MCC for its payments and not to Granbury Marina and explicitly agreed that Granbury Marina has no obligation to pay or see to the payment of Berkel once Granbury Marina transmitted funds to MCC for distribution to Berkel in accordance with the Contract Documents.

.        .        .

> Defendant denies that Plaintiff has satisfied all conditions precedent to the assertion of its claims as set forth in its Original Petition or entitlement to recovery of the

---

[3] We assume, without deciding, that this contractual requirement is a condition precedent.

[4] MCC is MCC Design Build, an entity providing construction management services. It contracted with Hilton to select and supervise the trade contractors involved in building the hotel. Pursuant to this agreement, MCC "was to receive all payment applications from the trades, ensure that the work reflected was acceptably performed and the sums justly owed, and then compile those individual trade applications into one aggregate project payment application, which it submitted to [Hilton] for payment. [Hilton] then obtained a draw from the bank based on the project payment application, and paid MCC directly the amount requested in the project payment application. MCC was to distribute those funds to the prime contractors in accordance with the individual pay applications supporting the aggregate project pay application." At trial, Brettmann acknowledged that MCC was involved in the project and had paid the progress payments on Berkel's behalf.

relief sought. Plaintiff failed to perform and/or satisfy all conditions precedent to Plaintiff's right to recovery, if any.

This denial, although contesting the validity of Berkel's claims, does not specifically deny that Berkel failed to obtain approval and certification as contractually required. *See Hill v. Thompson & Knight*, 756 S.W.2d 824, 825-26 (Tex.App.--Dallas 1988, no writ)(holding that defendant did not comply with his burden under Rule 54 to specifically deny the plaintiff's contention that "[a]ll conditions precedent with respect to Plaintiff's claims against Defendant herein have been performed or have occurred[]" by responding with "[d]efendant denies that all condition precedent to the satisfaction of the claim of Thompson & Knight have been satisfied and demand [sic] strict proof with respect to all conditions precedent[]"). Because Hilton did not specifically deny the occurrence of this condition precedent, Berkel did not have to prove at trial that the condition precedent was satisfied, had been performed, or had occurred.

Nor should Berkel have been expected or required to do so. Under Rule 54, it is sufficient to aver the performance or occurrence conditions precedent generally. *See Greathouse v. Charter Nat. Bank-Southwest*, 851 S.W.2d 173, 174, 176-77 (Tex. 1992)(holding that creditor in a deficiency suit met its obligation to plead that disposition of the collateral was commercially reasonable by relying upon Rule 54 in averring generally that all conditions precedent have been performed or have occurred). Because the purpose of this rule is "to eliminate the necessity of alleging matters concerning which there is no bona fide dispute[,] . . . [t]he allegation is taken as true unless put in issue by the defendant's answer[.]" 2 ROY W. MCDONALD & ELAINE A. GRAFTON, TEXAS CIVIL PRACTICE, § 8:32, at 336-38 (2th ed. 2003). And, since the contract between Berkel and Hilton does not mandate that this condition precedent must be proved at a trial on the merits, there is no conflict between the terms of the contract and the provision of Rule 54

7

dispensing with such proof in the absence of a specific denial of the occurrence of the condition precedent in question. Because Berkel was not required to prove that the approval and certification condition precedent had been met, its failure to do so affords no grounds for relief for Hilton.

In its reply brief, Hilton acknowledges that its "failure to deny occurrence of the condition precedent bars [it] from relying on Berkel's failure to introduce evidence of its occurrence as a basis for reversal."[5] But Hilton counters that the operation of Rule 54 does not preclude it from adducing evidence concerning the existence and non-occurrence of a condition precedent. According to Hilton, it adduced evidence conclusively establishing that "Berkel's contract required it to obtain approval and certification as a condition precedent to payment but the company failed to do so." In support of this assertion, Hilton directs our attention to the following exchange at trial between Brettmann and Hilton's counsel:

> [DEFENDANT'S COUNSEL]: Do you have any document showing that Berkel and Company's work was certified by the construction manager to be complete and done in accordance with the contract?
>
> [PLAINTIFF'S COUNSEL]: Objection, Your Honor. This is not a document production. This is a trial. If they're requesting documents, it should have been done at pre-trial.
>
> [TRIAL COURT]: Overruled.
>
> [BRETTMANN]: No.
>
> [DEFENDANT'S COUNSEL]: Are you aware of any such document existing?
>
> [BRETTMANN]: I am not aware of it.
>
> [DEFENDANT'S COUNSEL]: I'm going to refer you to Article 6 of your contract that I've highlighted in front of you there under Final Payment: In order

---

[5] Hilton's stance has changed. In its initial briefing, Hilton claimed that it "pleaded lack of conditions precedent to Berkel's right to recovery . . . ."

to be entitled to final payment a Final Project Certificate for Payment is to have been issued by the construction manager; is that correct?

[BRETTMANN]:   Yes.

[DEFENDANT'S COUNSEL]:   Did I read that correctly?

[BRETTMANN]:   Yes.

[DEFENDANT'S COUNSEL]:   I'll pass the witness, Your Honor.

[PLAINTIFF'S COUNSEL]:   Nothing further, Your Honor.

Contrary to Hilton's assertion, Brettmann's testimony does not conclusively establish that Berkel *never* obtained approval and certification.   Rather, his testimony merely suggests this. Even when viewed in the light most favorable to Hilton, Brettmann's testimony does no more than indicate the absence of evidence supporting Berkel's case.   But that is of no consequence because Berkel was not required to prove at trial that it obtained approval and certification given Hilton's failure to specifically deny the non-occurrence of this condition precedent.   To show that the evidence was legally insufficient to support the jury's finding in favor of Berkel, Hilton was required to affirmatively disprove Berkel's case.   Brettmann's testimony falls short of doing so.

Hilton's first issue is overruled.

## BUSINESS-RECORDS EXCEPTION TO HEARSAY

In its second issue, Hilton contends that the trial court erred in admitting Plaintiff's Exhibits Nos. 2 and 3 under the business-records hearsay exception and that this error probably resulted in an improper judgment.   We agree.

### *Standard of Review*

We review a trial court's ruling admitting evidence for an abuse of discretion.   *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).   A trial court abuses its discretion

9

when it rules without regard for any guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

To obtain reversal of a judgment based upon an erroneous evidentiary ruling, the appellant must show that the error probably resulted in the rendition of an improper judgment. TEX.R.APP.P. 44.1(a); *Able*, 35 S.W.3d at 617. This usually requires the appellant to demonstrate that the whole case turned on the evidence in issue. *Able*, 35 S.W.3d at 617. To determine if the appellant has met its burden, we review the entire record. *Id.*

### *Applicable Law*

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. TEX.R.EVID. 801(d); 802; *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004). Under the business-records exception, evidence that is otherwise inadmissible as hearsay may be admissible if the proponent of the evidence demonstrates that: (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to make them; (3) they were made at or near the time of the event they record; and (4) they were made by a person with knowledge who was acting in the regular course of business. TEX.R.EVID. 803(6)[6]; *In re E.A.K.*, 192 S.W.3d 133, 142 (Tex.App.--Houston [14th Dist.] 2006,

---

[6] The language of Rule 803(6) was amended in 2015 as part of the general restyling of the Texas Rules of Evidence "to make [them] more easily understood and to make style and terminology consistent throughout." *See* 78 TEX. B.J. 374, 374, 377 (Tex. & Tex.Crim.App. 2015). When this case was tried, Rule 803(6) read:

> A . . . record . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

10

pet. denied). The predicate witness may be the custodian of records or another qualified witness. TEX.R.EVID. 803(6); *In re E.A.K.*, 192 S.W.3d at 142. Although the predicate witness does not need to be the creator of the record or have personal knowledge of its content, he must have personal knowledge of the manner in which the records were prepared. *In re E.A.K.*, 192 S.W.3d at 142.

## *Discussion*
## 1. Error

The trial court abused its discretion in admitting Plaintiff's Exhibits Nos. 2 and 3 because Berkel failed to establish the proper predicate for their admission as business records. Brettmann testified that he was the custodian of records for Berkel, that both exhibits were made at or near the time indicated on them, and that the exhibits were kept in the ordinary course of Berkel's business. But significantly—and fatally—Brettmann never testified that it was Berkel's regular practice to make the exhibits or that they were made by a knowledgeable person with a duty to make them. It is clear that Brettmann did not make the exhibits, and Berkel proffered no affidavit or testimony from a qualified witness establishing that the exhibits were business records and admissible over Hilton's objections.

Berkel offers two reasons why the trial court did not abuse its discretion in admitting the two exhibits as business records. Neither reason is persuasive.

First, Berkel argues that Hilton waived its right to complain of the admission of Plaintiff's Exhibit No. 2 by failing to renew its prior successful objection when the exhibit was offered again. In support of its argument, Berkel cites *Richardson v. Green*, 677 S.W.2d 497 (Tex. 1984), and *Marling v. Maillard*, 826 S.W.2d 735 (Tex.App.--Houston [14th Dist.] 1992, no writ), for the

---

TEX.R.EVID. 803(6), 61 TEX. B.J. 374, 394 (Tex. & Tex.Crim.App. 1998, amended 2015).

proposition that a party waives its objection to the admission of evidence when the same or similar evidence is later admitted without objection. This proposition is colorfully known as the "futility rule." *See Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998)("Our rule which requires objection to every offer is sometimes called 'the "futility rule"; that is, despite ruling of judge that evidence is admissible, party must keep making futile objections on pain of waiver.'")[Internal citations omitted]. But Berkel's reliance on the futility rule is misplaced given the particular circumstances of our case. In both *Richardson* and *Marlin*, the appellants did not lodge objections to the admission of evidence after initially having done so, nor could subsequent objections be imputed to them based on the surrounding circumstances. In our case, the converse is true. Based on the circumstances surrounding the admission of Exhibit No. 2, an objection to its admission the second time it was offered can be imputed to Hilton.

In *Richardson,* a mother sought to terminate a father's parental rights to their three-year-old son, alleging that the father had sexually abused the child. 677 S.W.2d at 498. At trial, the evidence on which the mother relied consisted primarily of uncorroborated, hearsay statements made by the child to various witnesses, including a caseworker for the Texas Department of Human Resources. *Id*. at 498-99. The caseworker testified, over the father's hearsay objection, as to what the child told her in their initial interview while they were alone in her office before going to another room to videotape their session. *Id*. at 499, 501. The father later consented to the admission of this videotaped interview for the purpose of impeaching the caseworker's testimony that she did not ask the child leading questions during their initial interview. *Id*. at 499, 501. The court of appeals, relying on the futility rule, held that the father had waived his hearsay objection to the caseworker's testimony regarding the initial interview

12

because he consented to the admission of the videotape recording of the second interview. *Richardson*, 677 S.W.2d at 501. The Texas Supreme Court disagreed, concluding that the two pieces of evidence were not sufficiently similar to invoke the futility rule because they were distinct in substance: whereas the videotape interview was evidence of the actual dialogue between the child and the caseworker and was replete with leading questions, the testimony of the caseworker was hearsay evidence of what was said in her office "supposedly without any leading or solicitation on her part." *Id.*

In *Marling*, the plaintiff sued a physician for misdiagnosing the cause of her neck swelling and performing unnecessary modified neck surgery. 826 S.W.2d at 737. At trial, the physician offered the testimony of a retired dental surgeon regarding the appropriateness of the surgery. *Id.* at 739, 740. The plaintiff objected to the dentist's qualification to render an opinion "on whether 'a modified radial neck dissection was appropriate for [plaintiff] under the circumstances[]'" on the basis that the dentist "'was not qualified in the area of head and neck surgery.'" *Id.* at 739. The trial court sustained the objection. *Id.* Opposing counsel proceeded to elicit additional testimony establishing the proper predicate, and the trial court twice overruled the plaintiff's objections to the dentist's qualifications. *Id.* Opposing counsel then asked the dentist if he "'fe[lt] like a modified neck dissection was appropriate treatment for [the plaintiff]'" "'based on the information that [he] [had] based on patients that [he had] treated in the past[] and [his] training[?]'" Without objection, the dentist answered, "'I think it was entirely appropriate based on my background.'" *Id.* On appeal, the plaintiff claimed that the trial court erred by admitting the dentist's testimony. *Id.* The appeals court disagreed, concluding that the plaintiff had failed to preserve her complaint for appellate review by permitting the dentist to give his previously

13

undisclosed opinion without objection.  *Id*.  In so concluding, the court reasoned that, "[c]ounsel for [plaintiff], by her silence, created the impression that she had decided against challenging the testimony in light of the additional predicate."  *Id.* at 739.

In this case, the particular circumstances surrounding the admission of Plaintiff's Exhibit No. 2 into evidence lead us to conclude that Hilton did not waive appellate review of its evidentiary objections to the exhibit.  As recounted above, Hilton objected to the introduction of this exhibit on two bases:  (1) the proper predicate for its introduction as a business record had not been established; and (2) the affidavits in the exhibits contained hearsay within hearsay.  The trial court sustained Hilton's proper-predicate objection and directed Berkel to lay the proper predicate. Berkel responded by eliciting further testimony from Brettmann, which has been reproduced above in full.  Berkel re-offered the exhibit, and the trial court—immediately—ruled as follows:

> All right.  The second objection is overruled.  The first objection is now overruled.  No. 2 is admitted.

The trial court's ruling reveals that it re-considered and overruled the proper-predicate objection it had initially sustained.  Because the trial court explicitly identified this evidentiary objection as the same one it was reconsidering and overruling, an objection to the admission of the exhibit on this basis the second time it was offered can be imputed to Hilton without requiring it to re-urge the same objection.[7]  Accordingly, Hilton preserved its complaint for appellate review.  *See* TEX.R.APP.P. 33.1(a)(To preserve a complaint for appellate review, a party must make a timely and specific objection followed by an adverse ruling.).

Second, Berkel asserts that Plaintiff's Exhibits Nos. 2 and 3 were admissible as business records because there is nothing to indicate that they are untrustworthy.  Berkel points out that the

---

[7] Of course, had Hilton wished to lodge different evidentiary objections to the exhibit, it was incumbent upon Hilton to do so at that time.

two exhibits are both standardized company forms signed by Berkel's Assistant Corporate Secretary "before a notary at the time [they were] created." But in arguing that Hilton has failed to demonstrate that the source of information or the method or circumstances of preparation of the exhibits indicate a lack of trustworthiness, Berkel puts the cart before the horse.

The trustworthiness of a business record comes into play only if its proponent has first established that: (1) the record was made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to make the record; (3) the record was made at or near the time of the event it records; and (4) the record was made by a person with knowledge who was acting in the regular course of business. *See* TEX.R.EVID. 803(6)(A)-(E). As our discussion above illustrates, Brettmann's testimony failed to establish that the exhibits met elements (2) and (4). And nothing in the exhibits affirmatively establishes that the Assistant Corporate Secretary had personal knowledge of the matters set forth in the exhibits or that he prepared the exhibits based on information transmitted by a person with knowledge. Nor does the creation of the exhibits establish that they were made in the regular practice of Berkel's business activity.

### 2. Harm

The trial court's erroneous evidentiary rulings probably resulted in the rendition of an improper judgment. Without Plaintiff's Exhibits Nos. 2 and 3, there would be insufficient evidence to prove the damages sustained by Berkel, and thus insufficient evidence upon which the trial court could have reasonably rendered a judgment in Berkel's favor.

Berkel contends that Hilton "has failed to show the admission of either exhibit resulted in an improper verdict" because the exhibits "were used to support [Brettmann]'s own testimony as

to the balance due under the contract."   In so contending, Berkel posits that "[t]he same testimony could have been secured from [Brettmann] without introducing either exhibit, or in the alternative, the documents could have been used to refresh [Brettmann]'s memory without admitting the documents as exhibits."   Contrary to Berkel's assertion, the exhibits are not cumulative of Brettmann's testimony.

As noted above, Brettmann referred to and relied on the information contained in Plaintiff's Exhibits Nos. 2 and 3 when testifying to the amount Hilton owed Berkel.   It is obvious that Brettmann's knowledge concerning the amount of non-payment was derived from his review of the exhibits; Brettmann admitted that he lacked personal knowledge of the work and accounting on the project.   As a result, the entire case turns on the admission of these exhibits, and the trial court's judgment likely would not have remained the same without them.   We, thus, conclude that the trial court erroneously admitted hearsay evidence and that this evidence was essential to the judgment.

Hilton's second issue is sustained.[8]

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded for a new trial.


August 14, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

---

[8] Given our resolution of this issue, we need not address Hilton's third issue, which if sustained, would have resulted in the same outcome: remand.   *See* TEX.R.APP.P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").