William TOMASI, III, Independent Executor of the Estate of William Tomasi, Jr., Deceased, Appellant,

v.

Robert LIAO, M.D., et al., Appellee.

No. 04–01–00079–CV.

Court of Appeals of Texas, San Antonio.

Oct. 3, 2001.

Ben A. Wallis, Jr., Law Office of Ben A. Wallis, Jr., Jesse R. Castillo, Martin, Drought & Torres, Inc., San Antonio, for appellant.

John J. Janssen, Porter, Rogers, Dahlman & Gordon, Corpus Christi, Rick Foster, Porter Rogers Dahlman & Gordon, P.C., San Antonio, Christopher J. Deeves, Ruth G. Malinas, Susan K. Murphy, Ball & Weed, P.C., Richard N. Francis, Jr., Cathy J. Sheehan, Plunkett & Gibson, Inc., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice and SARAH B. DUNCAN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

William Tomasi, III, independent executor of the Estate of William Tomasi, Jr., deceased ("Tomasi") appeals the trial court's order dismissing the underlying

lawsuit for failure to file a proper expert report as required by section 13.01 of the Medical Liability Insurance Improvement Act ("Act"). Tomasi asserts four issues contending: (1) the standard of review should be the de novo summary judgment standard not an abuse of discretion standard; (2) the expert who prepared the report submitted by Tomasi was qualified; (3) the expert report constituted a good faith effort to provide a fair summary of the expert's opinions; and (4) the trial court applied an erroneous standard in dismissing Tomasi's claims. We affirm the trial court's judgment.

## BACKGROUND

On April 12, 1998, William Tomasi, Jr. ("William") underwent surgery to relieve pressure created by subdural hematomas. During the surgical procedure, holes were drilled into William's skull and drainage tubes were attached. On April 15, 1998, Robert Liao, M.D. ("Liao") discharged William from the hospital and transferred him to ManorCare Health Services of Texas, Inc. ("ManorCare"). Justos Cisneros, M.D. ("Cisneros") was designated as William's attending physician at ManorCare. During and following the transfer, some of the drainage tubes detached allowing air to enter William's skull. On April 16, 1998, William was found comatose. William was readmitted into the hospital and underwent surgery to evacuate the air that had accumulated; however, William never recovered and died on June 13, 1998.

Tomasi filed the underlying lawsuit alleging that the decision to transfer William to ManorCare was premature and was controlled and influenced by Humana Health Plan of Texas, Inc. ("Humana"), which was William's health maintenance organization. Tomasi further alleged that ManorCare, Liao, and Cisneros failed to properly perform necessary medical treatment. Tomasi failed to timely file an expert report or bond as required by section 13.01 the Act; however, the trial court granted Tomasi an extension of time to file the report. Tomasi filed a report prepared by Dr. Ben Hill Passmore ("Passmore") within the extended deadline.

Liao, Cisneros, Humana, and Manor-Care moved to dismiss Tomasi's claims, asserting that Passmore was not a qualified expert and his report did not constitute a good faith effort to provide a fair summary of Passmore's opinions. The trial court granted the motions and dismissed Tomasi's claims with prejudice.

## JURISDICTION

Liao and Cisneros initially contend that Tomasi's appeal should be dismissed for lack of jurisdiction because his notice of appeal was not timely. The trial court signed the dismissal orders on November 1, 2000. On November 17, 2000, Tomasi filed his request for findings of fact and conclusions of law. Tomasi filed his notice of appeal on January 19, 2001. Liao and Cisneros contend that the notice of appeal was untimely because the request for findings of fact and conclusions of law did not extend the appellate deadlines.

Section 13.01(e) states that if a claimant fails to file a timely report, "the court shall, on the motion of the affected physician or health care provider, enter an order awarding as *sanctions* . . . the dismissal of the action. . . ." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e) (Vernon Supp. 2001) (emphasis added). Thus, an order under section 13.01(e) is a sanction. *See American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001) (citing section 13.01(e) of the Act). A request for findings of fact and conclusions of law will extend appellate deadlines when findings and conclusions "are not required by Rule 296 but are not

without purpose—that is, they could properly be considered by the appellate court." *IKB Industries (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 443 (Tex.1997). A "judgment rendered as sanctions" is an example of a situation in which a request would extend appellate deadlines. *See id.* Because the dismissal orders in this case were rendered as sanctions, the appellate deadline was extended, and we have jurisdiction to consider this appeal.

## STANDARD OF REVIEW

■ In his first issue, Tomasi contends that we should review the trial court's order under a de novo summary judgment standard of review not an abuse of discretion standard. During oral argument, Tomasi's counsel conceded that the standard of review is governed by the Texas Supreme Court's decision in *Palacios,* holding that "a trial court's decision to dismiss a case under section 13.01(e) is reviewed for abuse of discretion." 46 S.W.3d at 875. Tomasi's first issue is overruled.

■ A trial court abuses its discretion with respect to factual matters if the record establishes that "the trial court could reasonably have reached only one decision," and the trial court reached a different decision. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

## SECTION 14.01(E)

In his fourth issue Tomasi contends that the trial court applied section 14.01(e) of the Act in dismissing his claim, and section 14.01(e) is only applicable to testifying experts. Neither section 14.01(e) nor section 14.01(d) is mentioned in the trial court's findings of fact and conclusions of law;

therefore, the record does not support Tomasi's contention. Tomasi's fourth issue is overruled.

## EXPERT QUALIFICATIONS

■ In his second issue, Tomasi contends that the trial court erred in dismissing his lawsuit because Passmore was qualified to render a preliminary expert report. The appellees respond that Passmore, a psychiatrist, is not qualified to render opinions regarding the standard of care applicable to postoperative care following neurosurgery or the transfer of a patient to a nursing home following neurosurgery.

With respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of care, section 13.01(r)(5) defines "expert" as an expert qualified to testify under the requirements of section 14.01(a). TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(r)(5) (Vernon Supp.2001). In order to testify on the issue of whether a physician departed from accepted standards of medical care, section 14.01(a) requires the expert to be a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01(a) (Vernon Supp.2001). In determining whether a witness meets the third requirement of being qualified on the basis

of training or experience, the court must consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and

(2) is actively practicing medicine in rendering medical care services relevant to the claim.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 14.01(c) (Vernon Supp.2001).

■■■■ "[G]iven the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. Such a rule would ignore the modern realities of medical specialization." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). "[T]he offering party [must] establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Id.* at 153–54. "And when a party can show that a subject is substantially developed in more than one field, testimony can come from a qualified expert in any of those fields." *Id.* at 154.

Passmore's curriculum vitae lists his occupation as a medical doctor specializing in psychiatry. Passmore's affidavit does not expand further on his qualifications. Passmore's most recent teaching experience was at a psychiatric hospital and in a university's psychiatric department. Passmore lists his clinical experience as private practice. Most of Passmore's professional honors and accomplishments are in the field of psychiatry. The only mention of

neurology is his status as a diplomate of the American Board of Psychiatry and Neurology, but Passmore's status could be based merely on his experience in psychiatry. Passmore does not explain how this status gives him experience with regard to postoperative care following neurosurgery or the transfer of patients to nursing home facilities following neurosurgery. Passmore attaches an addendum to his curriculum vitae that states that through sitting on the peer review committee at a large hospital with a very active surgical service, he is "intimately acquainted with proper and safe post-operative care." However, Passmore does not provide detailed information regarding the extent of this experience and whether this experience was relevant to the standards applicable to postoperative care following neurosurgery, which was the specific issue before the court. *See Broders*, 924 S.W.2d at 153–54 (must establish experience regarding specific issue before the court).

It is possible that a psychiatrist who works closely with neurosurgeons may gain sufficient experience in the field of neurosurgery to be qualified to give an opinion on the standards applicable to postoperative care following neurosurgery. This record, however, fails to demonstrate that Passmore had such experience. The trial court did not abuse its discretion in concluding that Passmore was not qualified to render an opinion in this case. Tomasi's second issue is overruled.[1]

### Conclusion

The trial court's orders are affirmed.

---

1. Our conclusion that the trial court correctly determined that Passmore was not a qualified expert is dispositive of this appeal; therefore, we do not address Tomasi's third issue. *See* Tex.R.App. P. 47.1.