COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






IN RE: MIGUEL SAMONTE, JR.,
M.D., OSTENSIBLE AGENT OF LAS
PALMAS MEDICAL CENTER, 


                           Relator.


§

§

§

§

§



No. 08-04-00253-CV

AN ORIGINAL PROCEEDING

IN MANDAMUS




O P I N I O N

           In this mandamus proceeding, Miguel Samonte, Jr., M.D. complains of the trial
court’s denial of his motion to dismiss a medical malpractice suit. The motion challenged
the sufficiency of the unsigned and undated expert report filed by the plaintiff below. The
report also failed to met the minimum statutory requirements and did not reflect that the
report was prepared by an expert capable of rendering an expert opinion regarding the
applicable standard of care, failed to include the qualifications, training, experience, current
or past employment or specialty of the testifying expert, is unsigned and undated. Relator
raises the question of whether such a report, as tendered to the defendant, demonstrates a
good faith effort on the part of plaintiff to comply with Tex. Rev. Civ. Stat. Ann. art 4590i,
now Tex. Civ. Prac. & Rem Code Ann. § 74.001 et seq. Finding that the reports were filed
in good faith, the trial court denied the motion to dismiss. We conditionally grant relief.
I. FACTUAL SUMMARY
           The underlying cause of action arises from a medical malpractice case involving the
care and treatment of Ricardo Rangel. Rangel had elected to undergo carpel tunnel surgery
to be conducted by Dr. Andrew Joseph Palafox at the Las Palmas Medical Center on
November 1, 2002. Defendant Miguel Samonte, Jr., M.D. was the anesthesiologist managing
the anesthesia of Ricardo Rangel. Subsequent to the surgery, Ricardo Rangel suffered a
cardiac arrest. All efforts to resuscitate him were not successful and he was pronounced dead
approximately one and a half hours after the surgery.
           The decedent’s mother, Julia Rangel, filed her Original Petition against Samonte and
the other treating physician present during Ricardo Rangel’s surgery and the hospital, 
asserting various claims of medical negligence


.
           The plaintiff timely filed an expert’s report as required by the Medical Liability and
Insurance Improvement Act (the Act).


 The report is purportedly prepared by Dr. George
Mychaskiw II, D.O. and is included in the appellate record. Relator has urged that the report
as prepared and produced is deficient for a variety of reasons including substantive defects
as to the form and content of the report. He contends that it does not comport with the
requirements of the Texas Medical Liability and Insurance Improvement Act and, therefore,
the cause against him should be dismissed.
           Samonte moved to dismiss the Plaintiff’s claims against him and the court conducted
a hearing to address the adequacy of the report. Samonte argued that the report was deficient
because it did not state that Mychaskiw had knowledge of or was qualified to discuss the
accepted standards of care, did not state that the expert was board certified, whether he was
practicing medicine at the time, or whether he was qualified on the basis of training or
experience to offer a report, and was not signed. He also argued that the purported expert’s
curriculum vitae was not included with the report. Plaintiff’s counsel argued that the
tendered report should be considered a good faith effort to comply with the requirements of
the act.
           After a hearing on the issue, the trial court denied Samonte’s motion. Relator has
filed an Original Petition for Writ of Mandamus seeking relief from this Court and raising
five issues on appeal. Issues One, Two, and Four attack the trial court’s failure to dismiss
the cause on the grounds that the expert’s report fails to comply with the requirements of the
Act, Issue Three asserts that the plaintiff’s report as produced does not equate to a good faith
attempt to comply with the Act, and finally, that the defendant does not have an adequate
remedy at law and is therefore entitled to mandamus relief. For the reasons stated below, we
agree with Relator and conditionally grant relief as noted.
II. THE STATUTE
           The Medical Liability and Insurance Improvement Act (the Act) was enacted by the
Texas Legislature to curtail frivolous claims. Hart v. Wright, 16 S.W.3d 872, 876 (Tex.App.--Fort Worth 2000, pet. denied); Horsley-Layman v. Angeles, 968 S.W.2d 533, 537
(Tex.App.--Texarkana 1998, no pet.). In order to encourage the screening of medical
malpractice claims by an expert prior to filing, the Act requires a plaintiff to provide each
defending physician or health care provider with one or more expert reports relating to
liability and causation. Wood v. Tice, 988 S.W.2d 829, 830 (Tex.App.--San Antonio 1999,
pet. denied); see Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d). The expert report, along
with a curriculum vitae of each expert, must be furnished to the defendant not later than the
180th day after the date on which a health care liability claim is filed or the last day of any
extended period as permitted under the statute. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 
13.01(d). If a plaintiff fails to comply with this provision and the defendant files a motion
seeking sanctions pursuant to Section 13.01(e), a trial court has no discretion and must enter
an order dismissing the case with prejudice. Tex. Rev. Civ. Stat. Ann. art. 4590i, §
13.01(e)(3); Hart, 16 S.W.3d at 876. Where an expert report is tendered, the defendant may
challenge the adequacy of the report. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l );
Hart, 16 S.W.3d at 876. The trial court is authorized to grant a motion to dismiss “only if
it appears to the court, after hearing, that the report does not represent a good faith effort to
comply with the definition of an expert report in Subsection (r)(6) of this section.” Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 13.01(l ). An expert report is defined as a fair summary of the
expert’s opinions regarding: (1) applicable standards of care, (2) the manner in which the
care rendered by the physician or health care provider failed to meet the standards, and (3)
the causal relationship between that failure and the injury, harm, or damages claimed. Id. §
13.01(r)(6).
III. STANDARD OF REVIEW
           We apply an abuse of discretion standard when reviewing a trial court’s ruling on a
dismissal under Section 13.01(e)(3). American Transitional Care Ctrs. of Texas, Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001); Hart, 16 S.W.3d at 875; Tibbetts v. Gagliardi,
2 S.W.3d 659, 663 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). Mandamus will lie
only to correct a clear abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992) (orig. proceeding). A clear abuse of discretion warranting correction by mandamus
occurs when a court issues a decision which is without basis or reference to guiding
principles of law. See Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985)
(orig. proceeding). An appellate court rarely interferes with the trial court’s exercise of
discretion and we may not substitute our judgment for that of the trial court. Walker, 827
S.W.2d at 839-40. The relator must therefore establish that the trial court could reasonably
have reached only one decision. Id. at 840. Even if we would have decided the issue
differently, we cannot disturb the trial court’s decision unless it is shown to be arbitrary and
unreasonable. Id. With respect to a trial court’s determination of the legal principles
controlling its ruling, the standard is much less deferential. A trial court has no discretion
in determining what the law is or applying the law to the facts. A clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of discretion and may
result in appellate reversal by extraordinary writ. Id.
           An appellate court will deny mandamus relief if another remedy, usually appeal, is
available and adequate. Id. Mandamus is intended to be an extraordinary remedy, available
only in limited circumstances. The writ will issue only in situations involving manifest and
urgent necessity and not for grievances that may be addressed by other remedies. Holloway
v. Fifth Court of Appeals, 767 S.W.2d 680, 684 (Tex. 1989).
IV. INADEQUACY OF THE EXPERT’S REPORT
           The sole question for the trial court was whether the report tendered represented a
good faith effort to comply with the statutory definition of an expert report. Palacios, 46
S.W.3d at 875. Because the Act focuses on the contents of the report, the only information
relevant to the inquiry is contained within the four corners of the document. Id. at 878. The
trial court should look no further than the report itself in determining whether it constitutes
a fair summary of the expert’s opinions about the applicable standard of care, the manner in
which the care provided failed to meet that standard, and the causal relationship between that
failure and the claimed injury. Id. Further, the report itself must establish the expert’s
qualifications on the basis of training and experience. See In re Windisch, 138 S.W.3d 507,
511 (Tex.App.--Amarillo 2004, orig. proceeding).
           A trial court may grant a motion challenging the adequacy of an expert report only if
it appears, after hearing, that the report does not constitute a good faith effort to comply with
the definition of an expert report. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l ). An
“expert report” is defined as “a written report by an expert that provides a fair summary of
the expert’s opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the injury, harm, or damages
claimed.” Id. § 13.01(r)(6). While the report does not have to present all the plaintiff’s
proof, it must include the expert’s opinion on each of the elements identified in the statute. 
Palacios, 46 S.W.3d at 878. The report must inform the defendant of the specific conduct
being questioned and provide a basis for the trial court to conclude the claims have merit. 
Id. at 879. A report that merely states conclusions about the standard of care, breach, and
causation is not sufficient. Id. Nevertheless, the report does not have to meet the same
requirements as the evidence offered in support of a summary judgment proceeding or at
trial. Id.
           One basis upon which Samonte attacked the report provided by plaintiff is that it
failed to include any information describing Dr. Mychaskiw’s qualifications to render an
opinion on the matters in controversy, specifically the standard of care and possible breach. 
A person may qualify as an expert witness on the issue of whether a physician departed from
accepted standards of medical care only if the person is a physician who (1) is practicing
medicine at the time such testimony is given or was practicing medicine at the time the claim
arose, (2) has knowledge of accepted standards of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim, and (3) is qualified on the
basis of training or experience to offer an expert opinion regarding the accepted standards
of medical care. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 14.01(a). In determining whether
the expert is qualified on the basis of training or experience, the court is to consider whether,
at the time the claim arose or the testimony is given, the witness is board certified or has
other substantial training or experience in an area of practice relevant to the claim and is
actively practicing medicine in rendering medical care services relevant to the claim. Id. §
14.01(c); Hagedorn v. Tisdale, 73 S.W.3d 341, 349 (Tex.App.--Amarillo 2002, no pet.).
           Every licensed doctor is not automatically qualified to testify as an expert on every
medical question. Hagedorn, 73 S.W.3d at 350; Broders v. Heise, 924 S.W.2d 148, 152
(Tex. 1996). On the other hand, the fact that an expert is not a specialist in the particular
branch of the profession for which the testimony is offered will not automatically disqualify
him as an expert. Hagedorn, 73 S.W.3d at 350; Blan v. Ali, 7 S.W.3d 741, 745 (Tex.App.--Houston [14th Dist.] 1999, no pet.). The issue is the specific subject matter and the expert’s
familiarity with it. Hagedorn, 73 S.W.3d at 350; see Broders, 924 S.W.2d at 153; Blan, 7
S.W.3d at 745. As already noted, there are specific criteria to be met under the Medical
Liability and Insurance Improvement Act for an expert to testify as to whether a physician
departed from accepted standards of medical care. Hagedorn, 73 S.W.3d at 350.
           An expert report, as defined in Section 13.01(r)(6), must be the written report of an
expert. By definition also, a person giving opinion testimony regarding a physician’s breach
of accepted standards of medical care is an expert only if qualified to testify under the
requirements of Section 14.01(a). Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(5)(A). 
A Section 13.01 report concerning standards of care for physicians authored by a person who
is not qualified to testify under Section 14.01(a) thus cannot constitute an adequate report.
That the person is so qualified must appear from the report, with its accompanying
curriculum vitae. In re Windisch, 138 S.W.3d at 511; Chisholm v. Maron, 63 S.W.3d 903,
907 (Tex.App.--Amarillo 2001, no pet.). It follows that a challenge to the adequacy of a
report under Section 13.01(l ) may be based on a claim that it fails to demonstrate the person
rendering the opinion is qualified to testify, as well as on other claims of its inadequacy. In
re Windisch, 138 S.W.3d at 511.
           The parties appeared at a hearing on February 27, 2004. No witnesses were called and
the trial court reviewed the motion and response of the parties. The trial court found only
that the plaintiff had made a good faith effort to comply with the statutory requirements of
the Act because, the document, “provides for a first summary of the report.” The trial court
also held that based upon the affidavit of a former employee of plaintiff’s attorneys, the
plaintiff had provided a copy of the curriculum vitae to defendant. We note that the
curriculum vitae does not appear anywhere in the appellate record. The affidavit referred to
by the trial court is included and the affidavit references a report the affiant produced to
defendant’s attorney. Attached to the affidavit, is a copy of the three-page document
purportedly prepared by George Mychaskiw II, D.O. as the purported expert’s report but it
does not include a copy of the missing curriculum vitae. Though the trial court specifically
held that the plaintiff had provided a copy of the curriculum vitae to defendant’s counsel,
we have not seen such a document. We agree that a copy of the curriculum vitae of the
expert must be provided as an attachment to the report and note that the document should
appear in the appellate record but does not. Tex. Rev. Civ. Stat. Ann. art. 4590i, §
13.01(d)(1). As noted, the determination of Mychaskiw’s qualifications to provide an expert
report must be made on the basis of the contents of the report and curriculum vitae. In re
Windisch, 138 S.W.3d at 511; Chisholm, 63 S.W.3d at 907; see Palacios, 46 S.W.3d at 878.
A court reviewing the adequacy of a Section 13.01 report should look no further than the
report itself because all information relevant to the inquiry is contained within its four
corners. In re Windisch, 138 S.W.3d at 511; Bowie Memorial Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002); Palacios, 46 S.W.3d at 878. Accordingly, we must make our
determination from a review of the actual document provided to us as Mychaskiw’s report
noting the missing curriculum vitae.
           As discussed previously, in a suit against a physician, the expert report required by
Section 13.01 is a written report by an expert qualified to testify under the requirements of
Section 14.01(a), which mandates the witness: (1) be practicing medicine at the time of his
testimony or at the time the claim arose; (2) have knowledge of the accepted standards of
care for the diagnosis, care, or treatment of the condition involved; and (3) be qualified on
the basis of training or experience to offer an expert opinion on those accepted standards of
care. Tex. Rev. Civ. Stat. Ann. art. 4590i, §14.01(a). Section 14.01(c) provides a court
with factors it is to consider in determining whether a witness’s training or experience
qualifies the witness as an expert under the Act. The factors are whether, at the time the
claim arose or when testimony is given, the witness (1) is board certified or has other
substantial training or experience in an area of medical practice relevant to the claim; and (2)
is actively practicing medicine rendering medical care services relevant to the claim. Id.
Courts have referred to the standards discussed in Broders v. Heise, 924 S.W.2d 148 (Tex.
1996) in applying the criteria specified in Sections 14.01(a) and(c). In re Windisch, 138
S.W.3d at 511; see Forrest v. Danielson, 77 S.W.3d 842 (Tex.App.--Tyler 2002, no pet.);
Hagedorn, 73 S.W.3d at 341; Tomasi v. Liao, 63 S.W.3d 62 (Tex.App.--San Antonio 2001,
no pet.). Broders teaches that one offering expert medical testimony must establish that the
expert has expertise regarding “the specific issue before the court which would qualify the
expert to give an opinion on that particular subject.” In re Windisch, 138 S.W.3d at 512;
Broders, 924 S.W.2d at 153. The analysis focuses on “the very matter” on which the expert
is to give an opinion. In re Windisch, 138 S.W.3d at 512.
           In Tomasi, the court affirmed the dismissal of a claim after finding the plaintiff’s
expert, a psychiatrist, could not give an expert opinion on the standards of care for
post-operative care after neurosurgery, despite his status as a diplomat of the American
Board of Psychiatry and Neurology. The court noted it was possible for experience similar
to that described in the expert’s curriculum vitae to qualify a witness to testify about the
specific matters at issue, but citing Broders, found the witness had not provided sufficiently
detailed information to justify the conclusion he was qualified to do so. See In re Windisch,
138 S.W.3d at 512; Tomasi, 63 S.W.3d at 66.
           Similarly, in Forrest, an orthopedic surgeon submitted a Section 13.01 report in a suit
against a neurosurgeon and two vascular surgeons regarding surgery to remove a lumbar disc
protrusion, fuse vertebra, and install a pedicle screw and rod system. The court noted that
orthopedic surgery deals with correction of disorders of the skeletal system, that the spine is
a part of that system, and that an orthopedic specialist should be familiar with procedures to
correct problems of the spine. Concluding that the expert’s specialization in orthopedics
might thus be relevant to the claim involved in the case, the court nonetheless found there
was nothing in the report and curriculum vitae to indicate his familiarity with the procedures
used by the defendant physicians, and the plaintiff had failed to establish his qualifications
to give an expert opinion with respect to those procedures. In re Windisch, 138 S.W.3d at
511; Forrest, 77 S.W.3d at 848.
           In reviewing the qualifications of one rendering a Section 13.01 report, the “issue is
the specific subject matter and the expert’s familiarity with it.” In re Windisch, 138 S.W.3d
at 513; Hagedorn, 73 S.W.3d at 350, citing Broders, 924 S.W.2d at 153. The requirement
that a Section 13.01 report and curriculum vitae set forth the expert’s knowledge of the
procedure being questioned applies even when the defendant physician and the expert share
certification in the same specialty. In re Windisch, 138 S.W.3d at 511; see Richburg v. Wolf,
48 S.W.3d 375, 378 (Tex.App.--Eastland 2001, pet. denied).
           Broders recognized also that when the subject under inquiry is substantially developed
in more than one field, testimony can come from a qualified expert in any one of them. In
re Windisch, 138 S.W.3d at 513; Broders, 924 S.W.2d at 154. Likewise, courts have
recognized that some standards of care are applicable to multiple schools of practice, and
some subjects of inquiry will be common to all fields of practice. In re Windisch, 138
S.W.3d at 513; see Blan v. Ali, 7 S.W.3d 741 (Tex.App.--Houston [14th Dist.] 1999, no pet.).
In Silvas v. Ghiatas, 954 S.W.2d 50, 54 (Tex.App.--San Antonio 1997, writ denied), a
divided panel found an orthopedic surgeon qualified to testify against a radiologist as to the
issues there involved, stating that the specialties are intertwined and it is common knowledge
that orthopedic surgeons and radiologists work closely together.
           The report provided by George Mychaskiw II, D.O. does not contain any information
within the document that describes his qualifications, informs the reader that he has ever
worked in the field of anaesthesiology, or is currently working in the field. The report does
not appear on letterhead, is not dated, nor is it signed. The report does not discuss his
training or experience, nor does it establish how he is qualified to render an opinion on the
standard of care and the alleged breach of that standard. The only reference to identify the
purported author of the report is contained in four lines that appear at the end of the report. 
The lines only include the following information: George Mychaskiw II. DO [sic], 
Professor and Clinical Director, Department of Anesthesiology, University of Mississippi
School of Medicine. The bare minimum of information provided in no way complies with
the level of disclosure contemplated by the Act. We believe that the legislature was clear in
its directive, the report itself must contain sufficient information to establish that the
ostensible expert is qualified to render an opinion on the acceptable standards of care at issue. 
The report provided by Mychaskiw does not meet that standard.
            From the four corners of the report, we find no basis for a conclusion that
Mychaskiw’s training or experience qualify him to offer an expert opinion on the standard
of care for the use of anaesthesia during a surgical procedure. That being the case, the report
is not an expert report within the requirements of Section 13.01. In re Windisch, 138 S.W.3d
at 514; Chisholm, 63 S.W.3d at 907; see Palacios, 46 S.W.3d at 879; In re Morris, 93
S.W.3d at 390-91; Whitworth v. Blumenthal, 59 S.W.3d 393, 398-99 (Tex.App.--Dallas 2001,
pet. dism’d by agr.) (en banc).
           We agree with Palacios that an expert report by which the expert simply states that
he or she knows the standard of care and concludes it was not met is not sufficient to meet
the requirements of Section 13.01. See Palacios, 46 S.W.3d at 880. It likewise cannot be
sufficient for one rendering a Section 13.01 report simply to state in conclusory fashion that
he is qualified by training or experience to testify as to a particular matter. In re Windisch,
138 S.W.3d at 512-14; cf. Coastal Transport Co., Inc. v. Crown Central Petroleum Corp.,
136 S.W.3d 227 (Tex. 2004); Burrow v. Arce, 997 S.W.2d 229, 235 (Tex. 1999). We note
that the Mychaskiw report does not even contain such a statement. The report appears to be
a summary of the facts leading up to the incident with a critique of the incident but contains
no basis for the opinions provided.
           In many of the cases which we have reviewed for guidance, e.g., Forrest, 77 S.W.3d
at 844; Tomasi, 63 S.W.3d at 63, appellate courts were reviewing decisions of trial courts to
dismiss cases. The case before us, however, involves a claim that the trial court has abused
its discretion in failing to dismiss the case as a sanction for noncompliance with the statutory
requirements. We consider the requirement that the Section 13.01 report and curriculum
vitae set forth the expert’s familiarity with the particular procedure at issue to be sufficiently
well established, though, to require its application here. Accordingly, we conclude that under
the standards set forth by the Supreme Court in Palacios, the trial court misapplied Section
13.01(l) to the report submitted by the plaintiff in this case, and so abused its discretion. In
re Windisch, 138 S.W.3d at 512-14; see Walker, 827 S.W.2d at 840. Having found that the
report as provided does not comply with the statutory requirements, it is, therefore, not a
good faith effort to comply. Accordingly, we sustain Relator’s Issues One through Four.
V. INADEQUATE REMEDY AT LAW
           In Issue Five, Samonte contends that he has no adequate remedy at law because a
post-trial appeal cannot remedy the deprivation of a statutory due process right to pretrial
dismissal with prejudice. We agree with Samonte’s position and have addressed this issue
previously in In re Tenet Hospitals Ltd., 116 S.W.3d 821, 823-27 (Tex.App.--El Paso 2003,
orig. proceeding). Relator also directs us to In re Collom & Carney Clinic Ass’n, 62 S.W.3d
924 (Tex.App.--Texarkana 2001, orig. proceeding). There the court found mandamus proper
because the Act requires dismissal where a proper expert report is not timely filed. We agree, 
as has our sister court in Amarillo. See In re Rodriguez, 99 S.W.3d 825, 828 (Tex.App.--Amarillo 2003, orig. proceeding); In re Morris, 93 S.W.3d 388, 390 (Tex.App.--Amarillo
2002, orig. proceeding). Where a report totally omits one of the three required elements, the
trial court has a ministerial duty to dismiss the lawsuit with prejudice and has no discretion
to do otherwise. In re Tenet Hospitals Ltd., 116 S.W.3d at 823-27. We sustain Issue Five.
           Because we have found that the expert report as filed does not comply with the
requirements of the Act and finding also that Relator has no adequate remedy by appeal, we
will conditionally grant the petition for writ of mandamus. We are confident the trial court
will grant the relief to which Relator is entitled under Section 13.01(e) and this opinion. We
will direct the Clerk to issue the writ only in the event the trial court does not do so.
 
                                                                  RICHARD BARAJAS, Chief Justice
April 7, 2005

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.