COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-06-442-CV

 

 

PHILIP A. MOORE, M.D.                                                        APPELLANT

 

                                                      V.

 

KRISTY GATICA                                                                     APPELLEE

 

                                                  ------------

 

             FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                     OPINION
ON REMAND

 

                                                  ------------

Introduction








Appellant Philip A. Moore,
M.D. (Dr. Moore) appeals the trial court=s denial of his motion to dismiss the health care liability claim of
appellee Kristy Gatica (Gatica).  We
originally dismissed this interlocutory appeal for want of jurisdiction.  Moore v. Gatica, 253 S.W.3d 291 (Tex.
App.CFort Worth 2007) (mem. op.), rev=d, 253 S.W.3d 219 (Tex. 2008).  Because the Texas Supreme Court has held that
we have jurisdiction, we now consider the appeal on the merits.  Moore, 253 S.W.3d at 220.  In one issue, Dr. Moore contends that the
trial court abused its discretion in denying his motion to dismiss by
concluding that the expert report served upon him satisfied the requirements of
the civil practice and remedies code.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon Supp. 2008) (section 74.351).  We affirm.

Background Facts

In 2005, Gatica engaged Dr.
Moore to perform a laparoscopic appendectomy. 
Gatica alleges that following her surgery, she began to suffer
substantial pain, which required her to have further operations resulting in
scars, disfigurement, and impairment in her upper body.  Gatica claims that Dr. Moore caused these
problems by failing to perform the appendectomy with the ordinary care and
diligence used by other physicians. 
Specifically, Gatica alleges that Dr. Moore failed to correctly close
the cecum and ileum following the appendectomy and failed to determine that the
cecum and ileum had been improperly closed.  Gatica asserts that Dr. Moore=s negligence caused her over $500,000 in damages. 








On April 18, 2006, Gatica
filed her original petition against Dr. Moore, alleging that he negligently
performed the appendectomy.  After Dr.
Moore filed an answer containing a general denial, Gatica served on Dr. Moore
an expert report prepared by Louis F. Silverman, M.D. (Dr. Silverman), a
board-certified general and thoracic surgeon, which contained facts and
conclusions regarding Dr. Moore=s alleged negligence, as required by the statute.   








 Specifically, Dr. Silverman=s report detailed his education and career backgrounds and stated that
he Acare[s] for patients with appendicitis@ and was therefore qualified to Arender an expert opinion regarding the quality of that care.@  Formed from a review of Gatica=s hospital records, Dr. Silverman=s report then alleged the following summarized facts.  Dr. Moore consulted with Gatica on April 10,
2005 after Gatica had experienced three weeks of evolving abdominal pain.  The next day, Dr. Moore performed a
laparoscopic appendectomy.  After Dr.
Moore removed the appendix, a Astapler was fired across the base of the appendix@ to close the cecum, and vascular staples were applied to the
mesoappendix.  However, following these
procedures, Gatica=s
temperature rose, she began to vomit and have diarrhea, her white blood cell
count increased, and fluid collected in her intestines.  Because of these conditions, Gatica was
returned to surgery, which revealed leakage from where Dr. Moore had stapled
her.  To treat Gatica=s complications, Dr. Moore suctioned the drainage and sutured the
previously stapled appendiceal stump. 
However, after Dr. Moore attempted these corrective actions, Gatica=s temperature rose again, and a collection of fluid was discovered
behind her small intestine.  On May 4,
2005, Gatica was discharged from the hospital; however, on May 11, 2005, she
was readmitted with Apurulent,
foul-smelling drainage from her abdominal incision.@  Gatica was again discharged on
May 23, 2005.  But after having further
difficulties, Gatica was admitted in January 2006 to a different hospital with
complaints of severe abdominal pain.  A
new surgeon discovered that Gatica had Aconglomeration of soft granulation tissue and multiple heavy silk
sutures . . . surrounding the percutaneous drain.@  After more treatment, Gatica
was discharged again later that month. 

Based on these facts, Dr.
Silverman=s report
concluded that Dr. Moore failed to satisfy his duty of care because he (1)
failed to securely close and reinforce the appendiceal stump, resulting in
leakage and contamination, and (2) used silk sutures while knowing that leakage
existed, resulting in bacterial contamination. 
Dr. Silverman asserted that these conditions required Gatica to have
further abdominal surgeries.  Dr.
Silverman also provided a curriculum vitae, which detailed more than forty
years of surgical experience, with twenty-five years in private practice and Abroad practice encompassing all aspects of General, Thoracic and
Cardiovascular Surgery.@  His vitae detailed several certifications,
fellowships, and research activities.  








On August 29, 2006, Dr. Moore
filed a Motion to Dismiss with Prejudice, contending that Gatica failed to file
an adequate expert report as required by section 74.351.  Specifically, Dr. Moore asserted that Dr.
Silverman=s expert
report did not constitute a good faith effort at compliance with the
requirements of section 74.351 because Dr. Silverman had not adequately
qualified himself as an expert in the surgical management of laparoscopic
appendectomies.  After Gatica responded
to Dr. Moore=s motion and
the trial court heard counsel argue, the court denied Dr. Moore=s motion, concluding that Dr. Silverman=s report was Asufficient
to comply with the requirements@ of section 74.351.[1]  

Standard of Review








Texas courts agree that
review of a trial court=s denial of
a motion to dismiss under section 74.351 is subject to an abuse of discretion
standard.  See, e.g., San Jacinto
Methodist Hosp. v. Bennett,  256
S.W.3d 806, 811 (Tex. App.CHouston [14th Dist.] 2008, no pet.); Craig v. Dearbonne, 259
S.W.3d 308, 310 (Tex. App.CBeaumont 2008, no pet.); Lal v. Harris Methodist Fort Worth,
230 S.W.3d 468, 471 (Tex. App.CFort Worth 2007, no pet.). 
Also, a trial court=s decision on whether a physician is qualified to offer an expert
opinion in a health care liability claim is reviewed under an abuse of
discretion standard.  See Mem=l Hermann Healthcare Sys. v. Burrell, 230
S.W.3d 755, 757 (Tex. App.CHouston [14th Dist.] 2007, no pet.).

         To determine whether a trial court
abused its discretion, we must decide whether the trial court acted without
reference to any guiding rules or principles; in other words, we must decide
whether the act was arbitrary or unreasonable. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B 42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of discretion
has occurred.  Id.  A trial court does not abuse its discretion
if it commits a mere error in judgment.  See
E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex.
1995). 

Sufficiency of Dr. Silverman=s Expert Report

In his sole issue, Dr. Moore
asserts that the trial court abused its discretion by deciding that Dr.
Silverman=s expert
report satisfied the requirements of section 74.351.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351. 

Applicable Law








In a health care liability
claim, a claimant must serve an expert report (which addresses liability and
causation) on each defendant no later than the 120th day after the claim is
filed.  Id. ' 74.351(a), (j).  If an expert
report has not been served on a defendant within the 120‑day period, then
on the motion of the affected defendant, the trial court must dismiss the claim
with prejudice and award the defendant reasonable attorney=s fees and costs.  Id. ' 74.351(b).  A report Ahas not been served@ under the statute when it has physically been served but it is found
deficient by the trial court.  Lewis
v. Funderburk, 253 S.W.3d 204, 207B08 (Tex. 2008).  When Ano report has been served@ because the report that was served was found to be deficient, the
trial court has discretion to grant one thirty-day extension to allow the
claimant to cure the deficiency.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(c). 

A report is Adeficient@ (therefore
subjecting a claim to dismissal) where it Adoes not represent an objective good faith effort to comply with the
definition of an expert report@ in the statute.  Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(l).  While the expert
report Aneed not marshal all the plaintiff=s proof,@ Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001), it must provide a fair summary of
the expert=s opinions
as to the Aapplicable
standards of care, the manner in which the care rendered by the physician or
health care provider failed to meet the standards, and the causal relationship
between that failure and the injury, harm, or damages claimed.@  Tex. Civ. Prac. & Rem.
Code Ann. '
74.351(r)(6).








To qualify as a good faith
effort, the report must Adiscuss the
standard of care, breach, and causation with sufficient specificity to inform
the defendant of the conduct the plaintiff has called into question and to
provide a basis for the trial court to conclude that the claims have merit.@  Palacios, 46 S.W.3d at
875.  A report does not fulfill this
requirement if it merely states the expert=s conclusions or if it omits any of the statutory requirements.  Id. at 879. The information in the
report Adoes not have to meet the same requirements as the evidence offered in
a summary‑judgment proceeding or at trial.@  Id.  The claimant=s expert must incorporate enough information to fulfill two purposes:
(1) inform the defendant of the specific conduct the plaintiff has called into
question, and (2) provide a basis for the trial court to conclude the claims
are meritorious.  Id.  When reviewing the adequacy of a report, the
only information relevant to the inquiry is the information contained within
the four corners of the document.  Id.
at 878; see Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48,
52 (Tex. 2002).  This requirement
precludes a court from filling gaps in a report by drawing inferences or
guessing as to what the expert likely meant or intended.  See Austin Heart, P.A. v. Webb, 228
S.W.3d 276, 279 (Tex. App.CAustin 2007, no pet.) (citing Bowie Mem=l Hosp., 79 S.W.3d at 53). 








         An expert report concerning standards of
care for physicians Aauthored by
a person who is not qualified to testify . . . cannot constitute an adequate
report.@  In re Windisch, 138
S.W.3d 507, 511 (Tex. App.CAmarillo 2004, no pet.); see Ehrlich v. Miles, 144 S.W.3d 620,
624B25 (Tex. App.CFort Worth
2004, pet. denied).  To be an Aexpert@ on the departure
from a physician=s standard
of care (therefore qualifying the submission of an expert report), a person
must be a physician who

(1)
is practicing medicine at the time such testimony is given or was practicing
medicine at the time the claim arose;

 

(2)
has knowledge of accepted standards of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim; and

 

(3)
is qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of medical care.

 

Tex. Civ. Prac. & Rem. Code Ann. '' 74.351(5)(A), 74.401(a) (Vernon 2005 and Supp. 2008).  In determining the third element of this
standard, courts must consider whether the physician who completed the report
(1) is board certified or has other substantial training or experience in an
area of medical practice relevant to the claim, and (2) is actively
practicing medicine in rendering medical care services relevant to the
claim.  Id. ' 74.401(c).  In other words, 








there
is no validity, if there ever was, to the notion that every licensed medical
doctor should be automatically qualified to testify as an expert on every
medical question . . . [T]he proponent of the testimony has the burden to show
that the expert possesses special knowledge as to the very matter on which he
proposes to give an opinion.

 

Ehrlich, 144
S.W.3d at 625 (quoting Broders v. Heise, 924 S.W.2d 148, 152B53 (Tex. 1996)).  For this
reason, the offered report must generally demonstrate that the expert has Aknowledge, skill, experience, training, or education regarding the specific
issue before the court which would qualify the expert to give an opinion on
that particular subject.@  Ehrlich,  144 S.W.3d at 
625 (quoting Roberts v. Williamson, 111 S.W.3d 113, 121
(Tex. 2003)).

However, Athere are certain standards of medical care that apply to multiple
schools of practice and any medical doctor.@  See Blan v. Ali, 7 S.W.3d 741, 746 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 
Therefore, a physician Awho is not of the same school of medicine [as the defendant] is
competent to testify if he has practical knowledge of what is usually and
customarily done by a practitioner under circumstances similar to those
confronting the defendant.@  Ehrlich, 144 S.W.3d at
625; see also Marling v. Maillard,  826
S.W.2d 735, 740 (Tex. App.CHouston [14th  Dist.] 1992, no
writ).

Dr. Silverman=s Qualifications








Dr. Moore has not challenged
Dr. Silverman=s expert
report on the grounds that it fails to provide a fair summary of his opinions
on liability or causation.  Instead, Dr.
Moore only contends that Dr. Silverman was not statutorily qualified to submit
the report.  Therefore, we must determine
whether the trial court abused its discretion in determining that the
information contained within Dr. Silverman=s report established his credentials as a qualified Aexpert@ on Gatica=s claim under the civil practice and remedies code.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.401(a).

Dr. Silverman=s Practice of Medicine at the Time the Claim Arose     

To qualify him as an expert
for the purposes of this case, Dr. Silverman=s report must first establish that he is a physician who was
practicing medicine at the time he wrote the report or at the time Gatica=s claim arose.  Id. ' 74.401(a)(1).  Dr. Moore
has not contested that Dr. Silverman=s report establishes this element. 
Further, Dr. Silverman=s report indicates that he is a Aboard-certified general and thoracic surgeon in active practice in
Houston, Texas,@ and his
curriculum vitae demonstrates that he has active staff responsibilities at five
hospitals in Texas.  Therefore, Dr.
Silverman=s expert
report sufficiently establishes that he was practicing medicine during the time
Gatica=s claim arose and when he wrote his report.  See id. ' 74.401(a)(1).

 

 








Dr. Silverman=s Knowledge of Accepted Standards
of Medical Care for the  Diagnosis, Care,
or Treatment of Gatica=s Appendectomy and
Post-Operative Procedures, and His Qualifications to Offer an Expert Opinion
Regarding Those Standards

 

Next, Dr. Silverman=s report must establish that he has Aknowledge of accepted standards of medical care for the diagnosis,
care, or treatment of the illness, injury, or condition involved in the claim@ and that he is Aqualified on
the basis of training or experience to offer an expert opinion@ regarding those standards.  Id.
' 74.401(a)(2), (3).[2]   In determining whether Dr. Silverman is
qualified on the basis of training or experience, the trial court was required
to consider whether he was Aboard certified or ha[d] other substantial training or experience@ and whether he was Aactively practicing medicine@ in the area related to Gatica=s claim.  Id. ' 74.401(c).  Dr. Moore contends
that Dr. Silverman=s report did
not specifically state that he has experience in performing laparoscopic
appendectomies and that he was therefore not qualified to submit the expert
report supporting Gatica=s
claim.  We disagree.








  Dr. Silverman=s expert report and curriculum vitae demonstrate that he  has extensive experience in a broad range of
surgical practices and that he is a board-certified general and thoracic
surgeon.  Specifically, these documents
indicate that Dr. Silverman participated in eight years of residencies in general,
thoracic, and cardiovascular surgery; that he has certifications from the
American Board of Surgery, American Board of Thoracic Surgery, and Fellow
American College of Surgeons; that he completed substantial fellowships and
research tasks; and that he currently engages in a practice broadly covering Aall aspects@ of general,
thoracic, and cardiovascular surgery.  In
total, Dr. Silverman=s curriculum
vitae details over forty-five years of experience in various surgical
practices.     

More specifically, Dr.
Silverman=s report
stated that he has an active surgical practice in Houston, Texas, in which he
cares Afor patients with appendicitis such as Ms. Gatica had suffered@ and that he is therefore Aqualified by education, training, and experience to assess the quality
of such care and render an expert opinion regarding the quality of that care.@  His  report continued by detailing his knowledge
regarding the standards of care related to appendectomies.  After discussing the facts about Gatica=s medical care that were gathered from her medical records, Dr.
Silverman explained that 








[t]he
standard of care applicable to appendectomy for acute appendicitis mandates
secure closure of the appendiceal stump which requires closure to noninflamed
tissue, even if this requires placing the staple line across a small portion of
the cecum.  By failing to meet this
standard, Dr. Moore failed to achieve secure closure of the appendiceal
stump.  That failure resulted in massive
fecal contamination of Ms. Gatica=s peritoneal cavity.  The standard of care, given the presence of
severe inflammation in the periappendiceal area, required appropriate
reinforcement of the involved area, as in fact Dr. Moore attempted at Ms.
Gatica=s
subsequent operation.  

 








We conclude that these
statements, when considered in the context of the remainder of Dr. Silverman=s report, enabled the trial court to properly conclude that he had
knowledge of the accepted standards of medical care for the treatment of Gatica=s appendicitis and that he was qualified on the basis of training or
experience to offer an expert opinion regarding those standards.  See id. ' 74.401(a)(2), (3). 
Particularly, by indicating through his report and curriculum vitae that
his practice is solely focused on surgery, and by then explaining that he cares
Afor patients with appendicitis such as Ms. Gatica had suffered,@ Dr. Silverman adequately demonstrated that he has knowledge, skill,
experience, training, or education regarding the specific issue before the
trial courtCthe proper
conclusion of an appendectomy.  See
Ehrlich, 144 S.W.3d at 624B25; Kelly v. Rendon,  255
S.W.3d 665, 673 (Tex. App.CHouston [14th Dist.] 2008, no pet.) (deciding that a doctor was
qualified to submit an expert report in part because the report indicated the
doctor had Aexperience
treating patients with the same condition@ as the claimant); Castillo v. August,  248 S.W.3d 874, 882 (Tex. App.CEl Paso 2008, no pet.) (holding that a doctor was qualified to submit
an expert report about post-operative staph infections when his report
indicated that he had been Acalled upon to identify, diagnose, and treat post‑surgical and
hospital‑borne infections@).  Moreover, the factual detail
in Dr. Silverman=s report
regarding the proper conclusion of appendectomies indicates that he has
practical knowledge of what is Ausually and customarily done by other practitioners@ in such surgeries.  See Blan,
7 S.W.3d at 745.    








Dr. Moore contends that
because Gatica=s
appendectomy was laparoscopic, and because Dr. Silverman=s report did not indicate that he had experience in laparoscopic
procedures, he is disqualified from submitting an expert report for Gatica=s claim.[3]  However, Dr. Moore has failed to articulate
how the laparoscopic nature of Gatica=s appendectomy relates to the specific claims for negligence contained
in Gatica=s pleadings
(which all concerned the failure to close the cecum and ileum following the
surgical dissection of the appendix, rather than the means Dr. Moore used to
access or remove the appendix).  In fact,
Dr. Moore conceded in his reply brief to this court that it Ais Dr. Moore=s surgical
technique once addressing the appendix, not the type of incision or approach
involved in getting to the appendix, that is the basis of Gatica=s complaint.@  Because Gatica=s complaints about Dr. Moore do not depend upon standards relating to
laparoscopy but rather depend upon the proper conclusion of an appendectomy
(whether laparoscopic or not), we conclude that Dr. Silverman=s report was not required to establish his experience with
laparoscopic procedures.








  Finally, Dr. Moore has cited several cases
which hold that an expert report is inadequate where it does not demonstrate
the reporting doctor=s experience
with the medical procedure involved in the underlying claim.  See, e.g., Windisch, 138 S.W.3d at
513B14 (holding that a radiologist was not qualified to submit an expert
report because his report did not indicate any experience with the embolization
procedure at issue); Tomasi v. Liao,  63 S.W.3d 62, 65B66 (Tex. App.CSan Antonio
2001, no pet.) (determining that a psychiatrist was not qualified to submit an
expert report regarding postoperative care following neurosurgery when his
report did not explain whether he had any experience with such care); Forrest
v. Danielson,  77 S.W.3d 842, 848
(Tex. App.CTyler 2002,
no pet.) (deciding that the reporting doctor was disqualified because his
report failed to show familiarity with the care of a disc protrusion, which
formed the basis of the plaintiff=s claims).  Contrary to the
holdings of these cases, Dr. Silverman=s report does demonstrate that he has experience with performing an
appendectomyBthe very
procedure involved in Gatica=s claim.  

For these reasons, we hold
that the trial court did not abuse its discretion by determining that Dr.
Silverman=s expert
report qualified as a good faith effort to satisfy the requirements of section
74.351.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(l).
Therefore, we overrule Dr. Moore=s sole issue.  

Conclusion

  Having overruled Dr. Moore=s only issue, we affirm the trial court=s order denying his motion to dismiss.   

 

                                                   TERRIE
LIVINGSTON

JUSTICE

 

 

PANEL:  LIVINGSTON, DAUPHINOT, AND HOLMAN, JJ.

 

DELIVERED:
October 9, 2008











[1]Though
the trial court judge ruled that Gatica had made a good faith effort to comply
with the statute (and therefore denied Dr. Moore=s
motion), he nonetheless offered Gatica thirty days to Aimprove
upon@ Dr.
Silverman=s
report, opining that Aappellate
courts seem to be requiring a little bit more precision@ in
reviewing expert reports.  Gatica=s
counsel declined this offer, and Dr. Moore appealed.   





[2]At
trial and on appeal, Dr. Moore has conflated these two statutory provisions in
contending that Dr. Silverman was not qualified to submit his expert
report.  For this reason, and because the
statements made in Dr. Silverman=s report are dually
applicable to both provisions, we will analyze them together.  





[3]A
laparoscopic procedure differs from a laparotomic procedure in the means used
to gain access to the appendix.  Specifically, laparoscopic appendectomies
involve an examination of the appendix through a scope passed through the
abdominal wall, while laparotomic appendectomies require an incision into the
loin.  Stedman=s
Medical Dictionary 840, 1170 (25th Ed. 1990); see also Alvarado v. Conmed
Corp., No. EP‑06‑CV‑0198‑KC,  2008 WL 2783510, at *1 (W.D. Tex. Mar. 13,
2008) (explaining the difference between 
laparoscopic and laparotomic surgeries).