

# NUMBER 13-10-611-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MOSES E. WILCOX SR., M.D.,                                            Appellant,

v.

MARIA G. MONTALVO, ET AL.,                                            Appellees.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Vela, and Perkes
### Memorandum Opinion by Justice Vela

This is an interlocutory appeal from a trial court order denying a motion to dismiss

a healthcare liability claim filed against appellant, Moses E. Wilcox Sr., M.D.   Dr. Wilcox

asserts on appeal that the trial court erred because:   (1) the expert who filed the initial

report was not qualified; (2) the opinions of the expert were insufficient with respect to

both the standard of care and causation; (3) new claims raised by appellees were not supported by an expert report; and (4) filing a report compliant with chapter 74 of the civil practice and remedies code was not contingent upon Dr. Wilcox submitting to a deposition. We reverse and remand.

## I. BACKGROUND

Appellees, Maria G. Montalvo, Maria Colquitt, Maria Emilia Huerta, Maria Benigna Morales, Jose Pilar Garcia, Juan Francisco Garcia, Carlos Garcia Sr., Arnulfo Garcia, and Benito Garcia, as surviving children of Maria Luisa Garcia, Deceased, and as representatives of the estate of Maria Luisa Garcia (collectively "the Montalvos"), filed suit against Dr. Wilcox, alleging that Dr. Wilcox's negligence caused the wrongful death of Maria Luisa Garcia. Dr. Wilcox is a urologist. The claims against Dr. Wilcox, brought as health care liability claims, were that Garcia was dropped to the floor during an appointment at Dr. Wilcox's office. The Montalvos also claimed that "the Defendant's failure to properly care for Mrs. Garcia and allowing her to fall from the examining table was substandard medical care and represents medical negligence that proximately caused her premature death." The Montalvos further asserted that Garcia's hip was fractured due to the fall, she developed an embolus while undergoing surgery to repair the hip, and later died. The Montalvos amended their petition to allege negligent supervision and training, and claimed that Dr. Wilcox maintained unsafe premises. Specifically, they alleged: "the Defendant allowed a hazardous condition to exist in his examining room, specifically wires and cords stretched out across the floor which required Defendant's employee to negotiate while transporting your Decedent, an

2

amputee." They also claimed that Dr. Wilcox was liable pursuant to the doctrine of res ipsa loquitur.

In support of their claim of malpractice, the Montalvos submitted the affidavit of Karlen Downing, M.D., who stated that she had "specific experience in supervising the transfer of disabled patients" and that she was aware of the standard of care. Her curriculum vitae states that, at the time she wrote her report, she was the medical director of East Texas Medical Center in Fairfield, Texas and was on the part-time staff of the emergency room at Lakeside Hospital in Bastrop, Texas.

With respect to the standard of care and Dr. Wilcox's alleged breach of the standard of care, Dr. Downing opined:

> The standard of care in transferring patients from wheelchair to bed or vice versa, is to take proper precautions to make certain that the patient does not drop to the floor. This is especially true when an elderly amputee is being transferred. No documentation in either Dr. Wilcox's records or the hospital records gives an appropriate explanation for why the patient was dropped. Therefore it appears that dropping her to the floor was a failure to exercise proper safety precautions.

Dr. Downing expressed the following opinion with respect to causation:

> The records indicate that Ms. Garcia suffered a fracture of the femur on her amputated leg which was a direct consequence of the fall on May 14, 2008. It is certainly forseeable that a fracture of that nature would require surgery and that emboli are a known complication of such surgeries. Therefore it follows that the fall ultimately was a contributing factor in Ms. Garcia's untimely death.

She further concluded:

> For all of the above stated reasons it is my medical opinion, based on documentation provided, that the standard of care was not met [by] Dr. Wilcox and/or his staff and in my medical opinion the above failures directly caused her to suffer a fractured femur [and] contributed to the untimely demise of Maria Garcia.

3

Dr. Wilcox timely objected to the adequacy of the report and, thereafter, he filed a motion to dismiss and amended motion to dismiss complaining about the report's adequacy. The amended motion challenges Dr. Downing's qualifications to opine regarding the standard of care because, as an emergency room physician, she was not qualified to discuss the standard of care applicable to a urologist's office practice. The motion to dismiss also challenges Dr. Downing's affidavit because it fails to set forth the standard of care, breach of the standard of care, and fails to adequately establish a causal connection between the alleged negligence and the complained of injury. The trial court denied the motion to dismiss.

## II. STANDARD OF REVIEW

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of discretion standard to trial court's denial of motion to dismiss); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (same); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial court's granting of motion to dismiss). A trial court abuses its discretion when it renders an arbitrary and unreasonable decision, lacking support in the facts or circumstances of the case. *Samlowski v. Wooten*, No. 08-0667, 2011 WL 711091 at, *4 (Tex. Feb. 25, 2011); *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). Likewise, a trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Wooten,* 2011 WL

4

711091 at *4; *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996) (*citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

### III. ANALYSIS AND APPLICABLE LAW

A claimant is required to serve each defendant health care provider with an expert report within 120 days of filing suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon 2011). The report must provide a fair summary of the expert's opinions concerning the applicable standard of care, the manner in which the care rendered failed to meet the standard, and the causal relationship between the failure and the injury, harm, and damages claimed. *Id.* § 74.351(r)(6). An expert report must be rendered by one qualified to testify as an expert on the particular subject matter in issue. *Id.* § 74.351(r)(5). Expert reports cannot be based on mere conclusions or speculation. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). The report must inform the defendant of the specific conduct that the plaintiff has called into question and must provide a basis to show that the claims have merit. *Palacios*, 46 S.W.3d at 879.

### A. Qualifications

Dr. Wilcox first argues that Dr. Downing was not qualified to author the report because she was not qualified to opine with respect to handling patients within the setting of a urologist's office.

An expert report concerning standards of care for physicians "authored by a person who is not qualified to testify . . . cannot constitute an adequate report." *In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.–Amarillo 2004, orig. proceeding); *see Ehrlich v. Miles,* 144 S.W.3d 620, 624-25 (Tex. App.–Fort Worth 2004, pet. denied). To be an

5

"expert," the physician must be:

> (1) practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

> (2) knowledgeable about the accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

> (3) qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(A), 74.401(a). Courts consider whether the physician who completed the report (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim, and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 74.401(c). The offered report must generally demonstrate that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003). There are certain standards of medical care that apply to multiple schools of practice and to any medical doctor. *See Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Therefore, a physician "who is not of the same school of medicine [as the defendant] is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant." *Ehrlich v. Miles*, 144 S.W.3d at 625; *see also Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex. App.–Houston [14th Dist.] 1992, no writ).

6

Here, Dr. Downing's curriculum vitae showed that she was practicing medicine at the time she authored the report. Therefore, she sufficiently established that she met the first prong that she was practicing medicine at the relevant time. *See id.* § 74.401(a)(1).

Next, her report must establish that she has knowledge of accepted standards of medical care for the diagnosis, care or treatment of Garcia's injury. *See id.* § 74.401(a)(2). She averred that she had specific experience in supervising the transfer of disabled patients. Her curriculum vitae shows board certification in emergency medicine, and she stated that she practices emergency medicine and that she has more than thirty-four years in family practice, general surgery, obstetrics and emergency medicine. Dr. Downing's affidavit also stated that she has experience in supervising the transfer of disabled patients.

Under the circumstances presented here, the report established that Dr. Downing was qualified to opine on the supervision of the transfer of disabled patients. Although Dr. Downing was not a urologist, the act of transferring or supervising the transfer of a disabled patient would not be unique to the practice of urology. Her experience and specific statement that she had experience in transferring disabled patients is sufficient to show her basic qualification to opine on the specific issue of patient transfer. We overrule Dr. Wilcox's first issue.

**B. Standard of Care and Breach of the Standard of Care**

With respect to the standard of care and its breach, Dr. Downing opined that the standard "is to take proper precautions to make certain that the patient does not drop to the floor. This is especially true when an elderly amputee is being transferred." With

7

respect to breach, she opines: "No documentation in either Dr. Wilcox's records or the hospital records gives an appropriate explanation for why the patient was dropped." Dr. Downing also states that "it appears that dropping her to the floor was a failure to exercise proper safety precautions."

The expert's opinion must include his or her opinion with respect to the three main elements of the cause of action: "standard of care, breach and causation." *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). An expert report cannot merely state the expert's conclusions about the elements of the cause of action; the expert must explain the basis of his statements to link his or her conclusions to the facts. "A report that merely states the expert's conclusions about the standard of care, breach, and causation" does not fulfill the two purposes of a good-faith effort. *Palacios*, 46 S.W.3d at 879.

Basically, Dr. Downing's opinion is that proper precautions must be taken and apparently such precautions were not taken because there is no record of explanation. In other words, Dr. Wilcox must be negligent because his records do not explain what happened. But, her report did not articulate what specific negligent conduct has been called into question. And she does not state what Dr. Wilcox and his staff did or failed to do and what a reasonable and prudent physician would have done in the same or similar circumstances.

An expert must provide statements concerning the standard of care to identify the care expected that was not given with such specificity that inferences are not needed to discern them. *Palacios*, 46 S.W.3d at 880. The report must provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879. Dr. Downing's affidavit was

8

simply conclusory with respect to both the standard of care and its breach. She did not specifically describe the standard of care for transferring a disabled patient or what Dr. Wilcox did or failed to do that breached the standard. Identifying the standard of care is vital because "[w]hether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Id.* at 880. Here, the report does not mention what precautions should be taken to properly transfer a patient or in what manner Dr. Wilcox acted or failed to act in accordance with those precautions.

The Montalvos argue that Dr. Wilcox could not have been more specific in her affidavit because Dr. Wilcox refused to respond to discovery and refused to appear for deposition prior to Dr. Downing's report being filed. The record does not reflect that Dr. Wilcox refused to respond to proper discovery requests. Regardless, this argument is also meritless in view of the statute's near moratorium on discovery until an expert report and curriculum vitae are served. Certain discovery is allowed, such as information, including medical or hospital records or other documents or tangible things through written discovery and deposition on written questions. *Id.* § 74.351(s). Subsection (u) of the statute limits the claimant to not more than two depositions before the expert report is filed. *Id.* § 74.351(u). Decisions construing the statute have strictly applied the statutory prohibition against discovery in general. *See In re Jordan*, 249 S.W.3d 416, 418 (Tex. 2008) (orig. proceeding); *In re Huag,* 175 S.W.3d 449, 456 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding); *see also In re Knapp Med. Ctr. Hosp.*, No. 13-09-00382, 2009 WL 2398003, at *3 (Tex. App.–Corpus Christi July 1, 2009, orig.

proceeding) (mem. op.) (stating that the statute does not allow an oral deposition of a party prior to the service of an expert report). Thus, the Montalvos may not rely upon the inability to depose Dr. Wilcox prior to filing an expert report as a reason for producing a deficient report. Because Dr. Downing's report was deficient with respect to both the standard of care and its breach, we sustain Dr. Wilcox's second issue.

### C. Causation

Dr. Downing's affidavit was equally conclusory with respect to causation. She opined that Garcia suffered a fracture of the femur on her amputated leg which was a direct consequence of the fall on May 14, 2008. She indicated that it was forseeable that a fracture of that nature would require surgery and that emboli are a known complication of such surgeries. She concluded that the fall ultimately was a contributing factor in Ms. Garcia's untimely death.

In order for a report to be sufficient on causation, it must link the health care provider's acts with an injury. *See Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006). In *Bowie v. Wright*, the plaintiff argued that a single statement was sufficient to establish causation: "if the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then Wright would have had the possibility of a better outcome." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52-53. The supreme court disagreed, holding that the report was insufficient because it did not explain how the hospital's conduct caused the plaintiff's injury. *Id.* at 53. The court, in *Bowie*, ultimately concluded that there was no testimony linking the expert's conclusion to the hospital's breach. *Id.* at 53.

10

While Dr. Downing opines that the fall was a contributing factor to the death, she does not opine that the negligence, if any, of Dr. Wilcox caused the fall. In fact, she attempts to utilize the lack of information as indicia of negligence. The Montalvos' theory was that the fall happened because of negligence, which necessitated the surgery, which ultimately caused the death. Dr. Downing was required under the case law to flesh out what Dr. Wilcox did wrong and how the purported failure to properly transfer the patient proximately caused Garcia's injuries and death. Dr. Downing's report did not link any alleged departure from the standard of care to the facts. *See Gray v. CHCA Bayshore*, *L.P.*, 189 S.W.d 855, 859 (Tex. App.–Houston [1st Dist.] 2006, no pet.). Here, the report was conclusory because it did not provide information linking a negligent act to the death. See *Lopez v. Montemayor*, 131 S.W.3d 54, 60 (Tex. App.–San Antonio 2004, pet denied). We sustain Dr. Wilcox's third issue.

### D. Amended Claims

By his fourth issue, Dr. Wilcox argues that the amended claims raised by the Montalvos are health care liability claims for which there is no report. The nature of the safety related claims the Legislature intended to be included under the Medical Liability and Insurance Improvement Act ("MLIIA") are matters of statutory construction, reviewable de novo. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). The amended claims urged here are that there was a hazardous condition in Dr. Wilcox's examining room, specifically wires and cords, which required Dr. Wilcox's employees to negotiate around them while transporting Garcia.

11

To determine whether a cause of action is a health care liability claim, we examine the underlying nature of the claim. *Marks,* 319 S.W.2d at 664 (*citing Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). We look to the essence of the claim and consider the alleged wrongful conduct and the duties allegedly breached. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through artful pleading. *Garland Cmty. Hosp.*, 156 S.W.3d at 543; *see Yamada v. Friend*, No. 08-0262, 2010 WL 5135334, at **2, 4, 5 (Tex. Dec. 17, 2010) (unchallenged holding that claims encompassing physician's safety advice to water park were health care liability claims required dismissal of all claims arising from same facts on theory of improper claim-splitting). "Whether the underlying claim involves a health care provider's negligent act or omission, or the patient's exposure to some other safety risk, the relationship between the injury causing event and the patient's care or treatment must be substantial and direct for the cause of action to be a health care liability claim under the MLIIA." *Marks*, 319 S.W.3d at 664.

The Montalvos' claim is that Garcia was improperly transferred while in the care of Dr. Wilcox and his employees. The gravamen of their claim is a health care liability claim because it clearly involved the safety and care rendered to Garcia while in the care of Dr. Wilcox. The substance of the Montalvos' claim is that Dr. Wilcox failed to provide a safe method or environment for transferring a disabled patient. All of the Montalvos' claims are based on the same underlying facts. Permitting the same underlying facts to give rise to both a health care liability claim and an ordinary negligence claim as the Montalvos

12

attempted to plead in their amended pleading, would negate the procedures and limitations of the MLIIA. *Turtle Healthcare Group, L.L.C., v. Linan*, No. 09-0613, 2011 WL 711102, at *3 (Tex. Feb. 25, 2011) (per curiam).

The amended claims were merely shades and phases of the earlier pleaded health care liability claims, so we do not believe there was "no report" as to these claims. Even though Dr. Downing's report did not specifically address the amended claims, they were not substantively different from the earlier pleaded complaints that she did attempt to address, though deficiently. We overrule Dr. Wilcox's fourth issue.

## IV. Conclusion

Because we find Dr. Downing's report deficient with respect to the standard of care, its breach, and causation, we reverse the trial court's denial of the motion to dismiss and remand to the trial court for it to decide whether to grant the Montalvos a thirty-day extension. *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *see Wooten*, 2011 WL 711091 at *4. Section 74.351's plain language permits one thirty-day extension when a court of appeals finds deficient a report that the trial court considered adequate. *Brandal,* 257 S.W.3d at 207. In light of our ruling, we decline to address Dr. Wilcox's fifth issue regarding his request for attorney's fees.

ROSE VELA
Justice

Dissenting Memorandum Opinion
by Justice Dori Contreras Garza

Delivered and filed the
14th day of April, 2011.

13